Filed 7/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRISTOPHER POTTER, | B287614 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. MC026408) |
| v. | |
| ALLIANCE UNITED INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brian C. Yep, Judge. Reversed and remanded with directions.

Black Compean & Hall, Michael D. Compean and Frederick G. Hall, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Lane J. Ashley, Raul L. Martinez, and Celia Moutes-Lee, for Defendant and Respondent.

Plaintiff and appellant Christopher Potter (Potter) was injured by Jesus Remedios Avalos-Tovar (Tovar) in an auto accident. Tovar was insured by defendant and respondent Alliance United Insurance Company (AUIC), with a maximum liability limit of $15,000. Potter offered to settle personal injury claims against Tovar for his policy limit, but AUIC did not respond to the offer. The claim was later tried to a jury and Potter obtained a judgment against Tovar for nearly one million dollars—which the trial court subsequently vacated when granting AUIC's motion for new trial. Then, before retrial, AUIC paid Tovar $75,000 to release any bad faith claim he had against AUIC (for AUIC's failure to accept the early settlement offer). Potter again prevailed after the second trial, this time obtaining a judgment in excess of one million dollars. Unable to collect that sum from the insolvent Tovar, Potter sued AUIC and alleged the release it procured from Tovar was a fraudulent conveyance under statutory and common law. We consider whether the trial court was right to sustain AUIC's demurrer and dismiss the fraudulent conveyance suit on either of two alternative grounds— namely, that the suit was barred by the statute of limitations and failed to state a proper fraudulent conveyance claim.

# I.  BACKGROUND[1]

### A.    *AUIC Procures the Release After a Jury Finding for Potter*

In October 2007, Potter was severely injured when the motorcycle he was riding collided with the automobile Tovar was driving.  Tovar was insured under an automobile insurance policy issued by AUIC, which included liability coverage limited to $15,000 per person.

Two months after the accident, Potter wrote to AUIC and offered to settle his claims against Tovar in exchange for payment of the $15,000 policy limit.  The offer stated it would expire in 30 days.  AUIC did not respond to the offer before it expired.

Potter later filed a personal injury lawsuit against Tovar in Los Angeles Superior Court.  That action proceeded to trial in July 2009.  Tovar conceded he was at least partially at fault for Potter's injuries but challenged the amount of damages.  The jury returned a verdict in Potter's favor, awarding him $908,643.

Tovar filed a motion for a new trial and the trial court granted it—vacating the existing jury verdict and judgment.  Potter appealed.

In April 2010, while Potter's appeal was pending, AUIC and Tovar entered into a confidential "Release and Settlement Agreement" (Release) pursuant to which Tovar released and discharged AUIC from "any claims for negligence, delay, bad

---

[1]    Our factual recitation is taken from the operative complaint's allegations and attached exhibits.  (See generally *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1 (*Yvanova*).)

3

faith, punitive damages, unfair practices, malpractice, emotional distress, consequential loss and damage, excess judgment, and personal injury." Tovar also agreed he would "not make any assignments, file any suit, take any action or pursue any action [or] proceeding against releasees arising out of or in any way pertaining to the [Potter] automobile accident or the insurance and legal claims relating to said accident." In exchange for Tovar's release of claims and agreement to forego any assignment related to the Potter liability action, AUIC paid Tovar $75,000.

### B. Judgment Again for Potter, Who Cannot Collect Against Tovar

The Court of Appeal affirmed the order granting a new trial in the Potter liability action and the case was remanded for retrial. In early April 2012—before a trial setting conference in the personal injury action and some two years after the Release had been executed—counsel for Tovar disclosed the existence of the Release to Potter's counsel. The second trial in the personal injury action commenced approximately a year later. The jury again returned a verdict in Potter's favor, this time awarding him $975,000 in damages. The trial court also awarded Potter $108,455.59 in recoverable costs and $441,697.92 in prejudgment interest. In December 2013, the trial court entered judgment for Potter in the amount of $1,523,887.16.

From the time of the accident through the time of the second jury verdict, Tovar was insolvent—the only means he had of paying any significant portion of the judgment was his prerogative to sue AUIC. Potter offered to take an assignment of Tovar's rights against AUIC in exchange for a covenant not to execute the judgment against Tovar's personal assets. Because

4

he had already signed the Release, however, Tovar was unable to agree.

AUIC paid Potter the $15,000 policy limit but refused to satisfy the remainder of the judgment.

C. *Potter Sues AUIC on a Fraudulent Conveyance Theory and the Trial Court Sustains AUIC's Demurrer*

Potter filed an original complaint in this action alleging eight causes of action, including breach of contract, breach of the implied covenant of good faith and fair dealing, and engaging in a fraudulent conveyance. Potter subsequently filed first and second amended complaints, each alleging a single cause of action for fraudulent conveyance. Potter later filed a third amended complaint (the operative complaint) alleging only two causes of action: statutory and common law fraudulent conveyance.

The former cause of action, predicated on a violation of California's Uniform Voidable Transactions Act (the UVTA,[2] Civ. Code,[3] § 3439 et seq.), alleges Tovar was insolvent prior to and at the time Tovar and AUIC entered into the Release. The cause of

---

[2] The UVTA was formerly known as the Uniform Fraudulent Transfers Act (UFTA) until it was amended and renamed effective January 1, 2016. (Stats. 2015, ch. 44, § 3.) Although the transfer at issue here took place in 2010, the UVTA does not substantively differ from the UFTA in any manner pertinent to our analysis. Thus, like the parties, we refer to and cite the current version of the UVTA throughout this opinion unless otherwise noted.

[3] Undesignated statutory references that follow are to the Civil Code.

5

action further alleges that Tovar had a viable claim for breach of the implied covenant of good faith and fair dealing against AUIC, which was an "asset" he could have used to pay down his civil liability, and that AUIC participated in a fraudulent transfer of that asset by entering into the Release—which prevented Potter from collecting all or a greater share of the judgment in his favor.[4]

The operative complaint's common-law-based fraudulent conveyance cause of action proceeded on essentially the same theory, but without reliance on the terms of the UVTA. The Release was illegal, the cause of action alleged, because the insolvent Tovar transferred his right to sue for breach of the covenant of good faith and fair dealing to AUIC, AUIC intended to prevent Potter from collecting the full amount of the judgment, and Tovar did not receive reasonably equivalent value for the claim released.

AUIC demurred to the operative complaint, arguing the allegations predicated on the UVTA and common law failed to state facts sufficient to constitute a proper fraudulent conveyance cause of action. As relevant for our purposes, AUIC's demurrer argued the UVTA-based cause of action was (1) barred by the statute of limitations and constituted a sham pleading because

[4]     The operative complaint further alleged facts evidencing AUIC's intent to "hinder, delay or defraud" Potter, namely, the failure to disclose the Release for two years, the decision to enter into the Release after Potter had obtained a judgment against Tovar that was substantially higher than his policy limit, AUIC's awareness that Tovar lacked assets other than the rights to the bad faith claim he released, and the purportedly inadequate consideration Tovar received for the Release.

6

its amendments contradicted prior allegations regarding when Potter became a creditor of Tovar; (2) Potter lacked standing to assert a UVTA claim because AUIC was not a debtor, a transferee, or a person for whose benefit a transfer was made; (3) the bad faith claim was not an "asset" when Tovar and AUIC entered into the Release because there was no judgment in effect against Tovar at the time; and (4) Potter could not allege he was injured by the transfer. As to the common law cause of action, AUIC argued it failed because Potter lacked standing to sue and could not prove any injury.

At the demurrer hearing, the trial court initially opined the sham pleading and statute of limitations arguments "have some merit." But the court asked the parties to focus their arguments on "whether this [i.e., the released bad faith claim] is an asset, whether there's been a transfer of this asset, whether there are damages and, if so, whether they're speculative or not, and the issue of standing." The parties thereafter argued consistent with their positions in the demurrer briefing.

After hearing argument from counsel, the trial court acknowledged AUIC's conduct "doesn't pass the smell test for sure," but the court further mused that "doesn't mean that something unlawful was done." The court ultimately concluded it would sustain AUIC's demurrer without leave to amend "for all of the reasons we discussed other than [an argument made by AUIC seeking to invoke] the mediation privilege." The trial court prepared no further articulation of these reasons, and AUIC gave notice of the bottom-line ruling. A judgment of dismissal was then entered for AUIC.

## II.  DISCUSSION

Potter's briefing on appeal includes no meaningful discussion of his common law fraudulent conveyance cause of action, nor of why the trial court erred in sustaining the demurrer to it.  We therefore do not address it and instead affirm the trial court's ruling on that score.  But the trial court's UVTA ruling is adequately challenged, and that challenge has merit.

Insofar as the trial court sustained AUIC's demurrer because the UVTA claim is barred by the applicable statute of limitations, the conclusion is unsound.  That cause of action was timely filed because the fraudulent transfer complained of was made during the pendency of a lawsuit that would (and did) establish whether a debtor-creditor relationship existed between Potter and Tovar.  Under California precedent, the statute of limitations thus did not begin running until the judgment in the personal injury action became final.  The trial court's remaining reasons (from what we can gather) for sustaining AUIC's demurrer were also faulty.  Tovar's right to sue for bad faith was an asset under the UVTA because it was an assignable form of personal property at the time the Release was executed.  Potter had a "claim" against Tovar when the release was executed.  Potter sufficiently alleged injury because the cause of action was an asset of Tovar's that was put out of Potter's reach by the Release.  And AUIC is a proper defendant because the "transfer" of the bad faith claim (within the meaning of the UVTA, which defines "transfer" to include a "release") was made for its benefit.

### A.      *Standard of Review*

We review de novo an order sustaining a demurrer without leave to amend.  (*Centinela Freeman Emergency Medical*

*Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6[ ].)" (*Yvanova, supra,* 62 Cal.4th at p. 924, fn. omitted.)

"'[T]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action.' [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490-1491; accord, *Carman v. Alvord* (1982) 31 Cal.3d 318, 324 ["A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the [trial] court acted on that ground"]; *E.L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 504, fn. 2 [validity of the trial court's action, not the reason for its action, is what is reviewable].)

### B.   *Overview of the UVTA*

The UVTA is the most recent iteration of creditor protection statutes that trace their origin to the reign of Queen Elizabeth I. (Legis. Com. com., 12A pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 3439.01, p. 253; see also *Mejia v. Reed* (2003) 31 Cal.4th 657, 664 (*Mejia*).) A fraudulent transfer under the UVTA "'is a transfer by the debtor of property to a third person

9

undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.' [Citation.]" (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 648.) "Under the U[V]TA, a transfer can be invalid either because of actual fraud (Civ. Code, § 3439.04, subd. (a)) or constructive fraud (*id.,* §§ 3439.04, subd. (b), 3439.05) . . . ." (*Mejia, supra,* at p. 661.)

"A creditor who is damaged by a transfer described in either section 3439.04 or section 3439.05 can set the transfer aside or seek other appropriate relief under Civil Code section 3439.07." (*Monastra v. Konica Business Machs., U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1635-1636.) As pertinent here, a creditor may recover against either "[t]he first transferee of the asset or the person for whose benefit the transfer was made." (§ 3439.08, subd. (b)(1).)

Actual fraud under the UVTA is shown when a transfer is made, or an obligation is incurred, "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (§ 3439.04, subd. (a)(1).) Such a transfer is voidable as to a creditor of the debtor, "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred." (§ 3439.04, subd. (a).) It is not voidable, however, "against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee." (§ 3439.08, subd. (a).)

Constructive fraud under the UVTA can be shown in either of two ways. First, a transfer is constructively fraudulent where a debtor makes a transfer or incurs an obligation "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) [w]as engaged or was about to engage in a business or a transaction for which the

10

remaining assets of the debtor were unreasonably small in relation to the business or transaction[; or] (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."[5]  (§ 3439.04, subd. (a)(2).)  As with actual fraud, this form of transfer is voidable as to a creditor no matter whether the creditor's claim arose before or after the transfer. (§ 3439.04, subd. (a).)  Second, a transfer is constructively fraudulent when a debtor makes a transfer or incurs an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  (§ 3439.05, subd. (a).)  This form of transfer is voidable as to a creditor whose claim arose before the transfer was made.  (§ 3439.05, subd. (a).)

C.     *The UVTA's Filing Deadlines Pose No Bar to Potter's UVTA Cause of Action*

The UVTA states a cause of action under section 3439.04, subdivision (a)(1) (actual fraud) is "extinguished" unless filed "not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  (§ 3439.09, subd. (a).)  The statute provides a cause of action under section 3439.04, subdivision (a)(2) (constructive fraud—assets too small or debts too large) or

---

[5]     Former section 3439.04, subd. (a)(2)(B) used the phrase "he or she" rather than "the debtor."  (Former § 3439.04, subd. (a)(2)(B).)

11

section 3439.05 (constructive fraud—insolvency) must be filed "not later than four years after the transfer was made or the obligation was incurred."[6] (§ 3439.09, subd. (b).)

The "after the transfer was made or the obligation was incurred" language used by section 3439.09 was interpreted by the Court of Appeal over 20 years ago in *Cortez v. Vogt* (1997) 52 Cal.App.4th 917 (*Cortez*). The panel in that case analyzed when UVTA filing deadlines are triggered in a case where the "transfer alleged to be a fraudulent conveyance occurs during an underlying action which later establishes by final judgment the actual legal existence of a debtor-creditor relationship." (*Id.* at p. 929.) We are, of course, presented with that same basic scenario here: the Release was executed during the pendency of Potter's action against Tovar, which ultimately confirmed Potter was a creditor of Tovar.

Relying on "legislative material published in connection with the adoption of the [UVTA]," the *Cortez* opinion holds the filing deadlines run from the time the underlying judgment becomes final. (*Cortez, supra*, 52 Cal.App.4th at p. 929.) *Cortez* reached that conclusion in light of: (1) the UVTA's purpose as a cumulative remedy in addition to preexisting remedies— remedies for which California Supreme Court precedent holds the limitations period begins to run at the time of judgment in the underlying action (*Adams v. Bell* (1936) 5 Cal.2d 697, 703); (2) a desire to construe the UVTA in a manner consistent with other

---

[6] The wording of the UVTA differs slightly from the wording of the former UFTA. The differences are inconsequential for our analysis.

12

states' laws;[7] and (3) "[t]he potential of unnecessary litigation if strict time limits are drawn for fraudulent transfer cases in circumstances such as are involved in [*Cortez*]." (*Cortez, supra*, 52 Cal.App.4th at pp. 930-937.)

Potter's lawsuit against Tovar, the result of which would establish whether and to what extent Potter is a creditor of

---

[7] The analysis and result in *Cortez* has since been criticized by some courts in other jurisdictions. (See, e.g., *Schmidt v. HSC, Inc.* (2014) 131 Hawaii 497, 511; *Moore v. Browning* (Ct.App. 2002) 203 Ariz. 102, 109; but see *GEA Group AG v. Flex-N-Gate Corp.* (7th Cir. 2014) 740 F.3d 411, 417 [noting the Illinois Supreme Court has not addressed the issue and could potentially agree with the "forcefully argued" *Cortez*].) In the 20-plus years since *Cortez* was decided, however, no published case in California has disagreed with its holding or adopted the reasoning of the critical out-of-state cases. We will not be the first, partly in deference to the reliance interests that may have grown up around *Cortez* and to the salutary aim of ensuring predictability and stability in the law.

AUIC, for its part, does not argue *Cortez* was wrongly decided. Rather, AUIC cites *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156 (*PGA West*) and contends *PGA West* concluded section 3439.09 is a statute of repose (not a statute of limitations), thereby rendering *Cortez* distinguishable. AUIC misreads *PGA West*, or more precisely, reads it too broadly. The court in *PGA West* considered a question *Cortez* did not: whether section 3439.09, subdivision (c), which places a backstop seven-year filing cap on a UVTA action "[n]otwithstanding any other provision of law," is subject to tolling. *PGA West* does not, as AUIC suggests, declare either subdivisions (a) or (b) statutes of repose, and we decline to so extend the case's holding, which is solely focused on subdivision (c).

13

Tovar, was pending when the Release was signed. Following *Cortez*, the UVTA filing deadlines did not begin to run until judgment was entered in the underlying action. (*Cortez*, *supra*, 52 Cal.App.4th at p. 937.) That occurred on December 20, 2013, and Potter filed his original complaint within four years of that date, on June 24, 2016. The suit is therefore timely.

> D.     *The Operative Complaint States a Valid UVTA Claim*

AUIC's demurrer did not challenge the sufficiency of Potter's allegations of either actual or constructive fraud. Instead, the demurrer attacked the sufficiency of the foundational allegations that establish certain predicates for a UVTA violation, namely whether Potter sufficiently alleged (1) an asset was transferred, (2) Potter was injured by the transfer, and (3) any suffered injury entitled Potter to sue AUIC. AUIC continues to press these points on appeal. AUIC additionally argues the complaint failed to sufficiently allege that Potter had a "claim" against Tovar or that Tovar was insolvent at the pertinent time. We take up these arguments and find each lacking.

> 1.     *The cause of action for bad faith is an "asset"*

In pertinent part, the UVTA defines an asset as the "property of a debtor," excluding property "to the extent it is encumbered by a valid lien[,]" and "to the extent it is generally exempt under nonbankruptcy law." (§ 3439.01, subd. (a).) As noted by the Legislative Committee Comments, the definition of asset "requires a determination that the property is subject to enforcement of a money judgment. Under Section 704.210 of the Code of Civil Procedure, property that is not subject to

14

enforcement of a money judgment is exempt." (Legis. Com. com., 12A pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 3439.01, p. 253.)

"Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment." (Code Civ. Proc., § 695.010, subd. (a).) "'Property' includes real and personal property and any interest therein." (Code Civ. Proc., § 680.310.) "'Personal property' includes both tangible and intangible personal property."[8] (Code Civ. Proc., § 680.290.)

A cause of action to recover money damages is known as a "chose in action," which is considered a form of personal property. (*Vick v. DaCorsi* (2003) 110 Cal.App.4th 206, 212, fn. 35; see also Code Civ. Proc. § 17, subd. (b)(8)(A) [defining "personal property" to include "things in action"].) From just these basic definitional principles, Tovar's right to bring a bad faith cause of action would constitute personal property subject to the enforcement of a money judgment.

The Code of Civil Procedure, however, includes an exception to the rule that we must consider to see if it changes the result. The Code states: "Except as otherwise provided by statute, property of the judgment debtor that is not assignable or transferable is not subject to enforcement of a money judgment." (Code Civ. Proc. § 695.030, subd. (a).) The question, of course, becomes whether Tovar's bad faith cause of action was assignable, and for that, we look to the nature of the cause of action.

---

[8] Potter's opening brief contends at some length that the intangible nature of the property at issue here does not bear on the adequacy of his pleading. Because we agree and AUIC does not argue to the contrary, we do not address this point further.

"The implied covenant [of good faith and fair dealing] imposes on an insurer the duty to accept a reasonable settlement offer within policy limits when there is a substantial likelihood of a judgment against the insured exceeding policy limits. [Citation.]  An insurer who breaches this duty is liable for all of the insured's damages proximately caused by the breach, regardless of policy limits."  (*Wolkowitz v. Redland Ins. Co.* (2003) 112 Cal.App.4th 154, 162 (*Wolkowitz*).)  An insured, however, has no immediate remedy for a refusal to settle; rather, "[u]ntil judgment is actually entered, the mere possibility or probability of an excess judgment does not render the refusal to settle actionable."  (*Safeco Ins. Co. of Am. v. Superior Court* (1999) 71 Cal.App.4th 782, 788 (*Safeco*).)

An insured may, however, assign a cause of action for bad faith failure to settle in exchange for the plaintiff's covenant not to execute an excess judgment against the insured's personal assets.  (*Hamilton v. Maryland Cas. Co.* (2002) 27 Cal.4th 718, 732 (*Hamilton*); see also *21st Century Ins. Co. v. Superior Court* (2015) 240 Cal.App.4th 322, 327 (*21st Century*); *Safeco, supra*, 71 Cal.App.4th at pp. 788-789.)  This both "ensure[s] a reliable judicial determination of the insured's liability for purposes of a later bad faith action and eliminate[s] the insured's exposure to an excess judgment."  (*Wolkowitz, supra*, 112 Cal.App.4th at p. 164.)  The assignment "is not immediately assertable," but "becomes operative after the excess judgment has been rendered." (*Hamilton, supra*, at p. 732; see also *Wolkowitz, supra*, at p. 164 [an insured can assign the bad faith cause of action against the insurer to the claimant "before trial in the underlying action"]; *21st Century, supra*, at p. 327 ["insured may assign any bad faith claims to the plaintiff in exchange for a covenant not to execute;

16

the assignment will become operative *after trial* and in the event that an excess judgment has been rendered"].)

Under this established authority, Tovar's bad faith cause of action against AUIC was assignable when Tovar entered into the Release even though Tovar could not yet have sued AUIC. Because it was assignable, and because it does not appear to be otherwise exempted, the potential cause of action is property subject to a money judgment and therefore an asset under the UVTA. AUIC's arguments to the contrary are all unpersuasive.

AUIC relies on *Safeco*, *supra*, 71 Cal.App.4th 782, for the proposition that a cause of action for bad faith failure to settle accrues only after a judgment has been rendered in excess of the policy limits. True, that is what *Safeco* says, but that is not all it says. *Safeco* and the other cases we have cited recognize a bad faith cause of action may be assigned to the claimant *before* trial in the underlying action (*id*. at p. 788), and AUIC does not reckon with that aspect of precedent that is dispositive on the meaning of "asset" under the UVTA. AUIC also contends the cause of action was not an asset because Tovar could not have sold it to satisfy the excess judgment. The cause of action was transferable, though, and that undercuts AUIC's unsupported assertion that the cause of action was not an asset.

Additionally, AUIC contends section 1045, which provides "[a] mere possibility, not coupled with an interest, cannot be transferred," demonstrates the unaccrued cause of action could not have been assigned. This contention is similarly unpersuasive. "Although common law and statutory rules against assignment of expectations . . . prevent the transferee from immediately asserting his claim, the attempted transfer of a future right arising out of the breach of the insurer's duty to

17

settle in good faith operates as an 'equitable assignment or contract to assign, which becomes operative as soon as the right comes into existence.' [Citation.]" (*Schlauch v. Hartford Accident & Indem. Co.* (1983) 146 Cal.App.3d 926, 931, fn. 3.) Indeed, California courts have long enforced assignments of contingent expectancies "[d]espite . . . section 1045." (*Bank of California v. Connolly* (1973) 36 Cal.App.3d 350, 366-367; see also *Dougherty v. California Kettleman Oil Royalties, Inc.* (1937) 9 Cal.2d 58, 89.)

Because we conclude the cause of action was an asset within the meaning of the UVTA, AUIC's argument that the Release was not a transfer of an asset also fails. "'[T]ransfer' under the U[V]TA has a broad meaning." (*Sturm v. Moyer* (2019) 32 Cal.App.5th 299, 308.) It includes "*every* mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, *release*, lease, license, and creation of a lien or other encumbrance." (§ 3439.01, subd. (m), italics added.) Under the plain language of the UVTA, a release qualifies as a "transfer."

AUIC nevertheless relies on canons of statutory interpretation to argue Tovar's release of his contingent bad faith cause of action could not constitute a transfer under the UVTA because "release" only applies to an asset or interest in an asset, not to the release of a right. The canons do not alter the statute's plain meaning, however, and in any event, we have decided there was an asset involved and the argument therefore fails by necessity.

### 2. Potter alleged sufficient facts to establish he had a claim against Tovar

AUIC also argues Potter did not have a "claim" against Tovar, and thus was not a "creditor" when Tovar executed the Release, because Potter did not have a judgment against Tovar at the time. While AUIC is correct that a creditor under the UVTA is "a person that has a claim," the word "claim" is not as narrowly defined as AUIC contends. With an exception not pertinent here, a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." (§ 3439.01, subd. (b).)

The plain language of section 3439.01 demonstrates an individual need not have a judgment to have a claim, as does section 3439.04, which provides certain transfers are voidable as to a creditor "whether the creditor's claim arose before or after the transfer was made" (§ 3439.04, subd. (a)). Though Potter did not have a judgment against Tovar when the Release was executed, he had a claim against him. He and Tovar were thus, respectively, a creditor and debtor under the terms of the UVTA. (§ 3439.01, subds. (c), (e).)

### 3. Potter sufficiently alleged injury

The operative complaint alleges Potter obtained a verdict in his favor in the amount of $1,523,887.16 and has been damaged because he cannot collect the full amount of the excess judgment from either Tovar or AUIC. As we have already concluded, the bad faith cause of action was a transferrable asset. Without the Release, Tovar could have assigned the cause of action to Potter. If Tovar had declined to do so in favor of pursing it himself,

19

Potter could have placed a lien on the cause of action or potential proceeds of the lawsuit. (Code Civ. Proc., § 708.410, subd. (a).) The Release deprived Potter of those options. While it is unclear at this juncture what value Tovar's cause of action had or has,[9] the allegation is sufficient to demonstrate injury for the purposes of a demurrer.

We also reject AUIC's argument that Potter was not injured by the Release because it did not put any property out of the reach of a creditor. The basic premise of this contention is that Potter did not have a judgment or a "right to payment" when the Release was executed. As described above, a right to payment under the UVTA need not be "reduced to judgment" in order for a claim to exist. (§ 3439.01, subd. (b).) Potter had a "claim," and was a creditor, when the Release was executed.

> ### 4. *Potter alleged sufficient facts to establish AUIC is a proper defendant for this cause of action*

AUIC appears to have abandoned the contention, raised below, that Potter lacks standing to sue AUIC for fraudulent conveyance. We nevertheless address the contention briefly because it is unclear from the trial court's "for all of the reasons we discussed" ruling whether it based any part of its decision on this contention.

The UVTA permits a creditor to recover against a transferee or a "person for whose benefit the transfer was made."

---

[9] It seems fair to assume, however, from the $75,000 AUIC paid Tovar in consideration for the Release, that the cause of action had significant monetary value when the Release was executed.

(§ 3439.08, subd. (b)(1)(A).)  AUIC argued Potter could not state a cause of action for fraudulent conveyance against AUIC because AUIC was not a debtor, a transferee, or a person for whose benefit a transfer was made.  The facts as alleged in the operative complaint forestall this conclusion.  As alleged, the transfer in question was made for AUIC's benefit.

### 5.    *AUIC's insolvency argument fails*

AUIC argues the trial court properly sustained the demurrer because the Release did not render Tovar "insolvent" as defined by the UVTA.  Only one of the three methods of proving a violation of the UVTA requires a plaintiff to prove insolvency (§ 3439.05), and the operative complaint pleads all three methods in the alternative.  As a result, even if AUIC were correct, it has not shown the complaint fails to state a cause of action for violation of the UVTA.

### E.    *Potter Waived Any Challenge to the Demurrer Ruling on the Common Law Cause of Action*

Though Potter's briefs on appeal include passing mentions of his cause of action for common law fraudulent conveyance, he includes no meaningful discussion of it and cites no pertinent authority regarding it.  "'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862[ ].) 'We are not bound to develop appellants' arguments for them. [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194

Cal.App.4th 939, 956.)  *Cahill*'s observations apply fully to Potter's common law cause of action and the trial court's ruling as to that cause of action will therefore stand.


DISPOSITION

The judgment of dismissal is reversed and the case is remanded for further proceedings consistent with this opinion. Potter is to recover his costs on appeal.

**CERTIFIED FOR PUBLICATION**



BAKER, J.


We concur:



RUBIN, P. J.



MOOR, J.