Filed 10/12/21  Raphael v. Shaalemi CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARNON RAPHAEL, | B305984 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. |
| v. | No. EC066999) |
| AZIM SHAALEMI et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Affirmed.

The Sheikh Law Firm and Scott A. Sheikh for Plaintiff and Appellant.

Mark Andrew McBride for Defendants and Respondents.

_____

Plaintiff and appellant Arnon Raphael (Raphael), trustee of the Arnon and Terry Raphael Family Trust, appeals from a judgment following a bench trial in favor of defendants and respondents Azim Shaalemi (Azim), individually and as trustee of the Azim Shaalemi Trust and the Azim Shaalemi Family Trust, and Yama Shaalemi (Yama).[1]

We affirm.

## BACKGROUND

### I. *The Yamee Action*

In November 2015, Raphael filed a first amended complaint in *Raphael v. Yamee, Inc.* (Super. Ct., L.A. County, 2019, No. EC064088) (the *Yamee* action), alleging causes of action against Yamee, Inc., and Azim, individually, related to a commercial space leased to them by Raphael.

On July 10, 2017, Yamee, Inc., filed a notice of bankruptcy, which prompted the trial court in the *Yamee* action to order a continuance of the trial.

A bench trial was eventually held in July 2018. In April 2019, judgment was entered awarding Raphael $276,605.26 plus interest in damages from Yamee, Inc., and Azim, jointly and severally.

### II. *The Current Litigation*

#### A. The complaint

On July 13, 2017—three days after Yamee, Inc., filed its notice of bankruptcy in the *Yamee* action—Raphael filed the instant action. The complaint asserted causes of action to set aside fraudulent transfer and for conspiracy.

---

[1] Because Azim and Yama share the same last name, for clarity we refer to them, individually, by their first names. No disrespect is intended.

The complaint alleged that Raphael was the holder of a claim against Azim "consist[ing] of back rent, late fees, collection fees, and future rent under a written lease . . . and"—referring to the *Yamee* action—"the subsequent lawsuit to reduce the debt to a judgment . . . ." Prior to signing the lease and through the filing of the first amended complaint in the *Yamee* action, Azim owned a commercial property located on Ventura Boulevard in Studio City (the Ventura property) and a single-family residence located on Fairway Avenue in Studio City (the Fairway property). On or about June 22, 2017, less than three weeks before trial was set to begin in the *Yamee* action, Azim transferred the Ventura and Fairway properties to his son, Yama, by quitclaim deeds. Azim received no consideration for transferring the properties, which had a combined value exceeding $2,500,000.

The complaint further alleged that Raphael expected a judgment in the *Yamee* action exceeding $500,000 and that the property transfer "was made with an actual intent to hinder, delay, or defraud . . . Azim['s] . . . then and future creditors, in particular, [Raphael] in the collection of his claim and eventual judgment."

B. Trial

During a bench trial, Azim testified that he transferred the Ventura and Fairway properties to Yama, his only child, on June 22, 2017, without any payment or promise of payment by Yama, because Azim was planning to travel to Afghanistan for an unknown duration. Azim was born in Afghanistan and believed that it was his civic duty to return there to assist the United States military. He had previously intended to travel to Afghanistan in 2015 and had begun the process of transferring property to Yama. However, because his mother became ill, Azim

3

had to cancel his trip and did not proceed at that time with the property transfer. Azim denied that the reason he transferred the properties in 2017 was to avoid creditors, specifically Raphael. Azim claimed that he had no assets.

Yama testified that he was not aware of any liens (other than mortgages) on the Ventura and Fairway properties prior to taking ownership. Since he was in high school, Yama had ongoing discussions with Azim regarding transferring the Ventura property.

Samantha Navarro (Navarro), an employee at a bridge lender used by Azim, testified that Azim had previously attempted to transfer property to Yama in 2015.

C. <u>Judgment</u>

On February 3, 2020, the trial court found for Azim and Yama and against Raphael. According to the minute order, the court found that the "transfer of property was not done to avoid creditors and . . . was not fraudulent or voidable." The record does not indicate that a statement of decision was issued or requested. (See Code Civ. Proc., § 632.)[2] Judgment was subsequently entered on March 16, 2020.

---

[2] "'Upon a party's timely and proper request, [Code of Civil Procedure] section 632 requires a trial court to issue a statement of decision following "the trial of a question of fact by the court." The statement must explain "the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial . . . ."' [Citations.] If the parties fail to request a statement of decision, the trial court is not required to provide one." (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 995–996, fn. omitted (*Nellie Gail*).)

4

D. <u>Appeal</u>

Raphael timely appealed from the judgment.

## DISCUSSION

Raphael argues that substantial evidence does not support the trial court's finding that the transfer of the Ventura and Fairway properties was not done to avoid creditors and was not fraudulent or voidable. Instead, Raphael contends that the property transfer was voidable under Civil Code section 3439.04, subdivision (a)(2),[3] which is part of the Uniform Voidable Transactions Act (UVTA, § 3439 et seq.).[4]

### I. *Standard of Review*

We review the trial court's factual findings for substantial evidence. (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 811.) "'"In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden'" . . . and that party appeals, "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'"" (*Manela v. Stone* (2021) 66 Cal.App.5th 90, 105 (*Manela*); see also *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 279 ["Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character

---

[3]    All further statutory references are to the Civil Code unless otherwise indicated.

[4]    Raphael does not address his cause of action for conspiracy and has therefore forfeited any challenge regarding it. (*Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 786 ["issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited"].)

5

and weight as to leave no room for a judicial determination that it was insufficient to support a finding[]'"].)

II. *Relevant Law*[5]

The UVTA—formerly known as the Uniform Fraudulent Transfers Act (*Potter v. Alliance United Ins. Co.* (2019) 37 Cal.App.5th 894, 901 (*Potter*))—"permits a defrauded creditor to reach property that has been fraudulently transferred by a judgment debtor to a third party." (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1160, fn. 14.) "'Under the U[V]TA, a transfer can be invalid either because of actual fraud [citation] or constructive fraud [citations] . . . .'" (*Potter*, *supra*, at p. 904.)

"Actual fraud . . . is shown when a transfer is made, or an obligation is incurred, '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.' (§ 3439.04, subd. (a)(1).)" (*Potter*, *supra*, 37 Cal.App.5th at p. 904.)

Constructive fraud is shown "where a debtor makes a transfer or incurs an obligation '[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:  [¶]  (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction[; or]  [¶]  (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.'

---

[5]     Although the complaint did not include a specific citation to the UVTA, the judgment states that "[t]he case controversy fell under the Uniform Voidable Transfer [*sic*] Act."  This is not disputed in the parties' appellate briefs.  We therefore analyze Raphael's fraudulent transfer cause of action under the UVTA.

6

(§ 3439.04, subd. (a)(2).)" (*Potter*, *supra*, 37 Cal.App.5th at p. 904, fn. omitted.)[6]

A creditor seeking relief under section 3439.04, subdivision (a)(1) or (a)(2), of the UVTA bears the burden of proof by a preponderance of the evidence.  (§ 3439.04, subd. (c).)

III.  *Analysis*

In finding that the property transfer "was not done to avoid creditors and . . . was not fraudulent or voidable[,]" the trial court implicitly concluded that Raphael did not meet his burden of proving otherwise.  (See § 3439.04, subd. (c).)  Accordingly, we consider whether the evidence compelled a contrary finding as a matter of law.  (*Manela*, *supra*, 66 Cal.App.5th at p. 105.)

A.  Actual fraud (§ 3439.04, subd. (a)(1))

The evidence before the trial court did not compel a finding that Azim engaged in actual fraud—that is "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (§ 3439.04, subd. (a)(1).)

When testifying, Azim explicitly denied such intent and explained that he transferred the Ventura and Fairway properties to Yama because he intended to travel to Afghanistan

---

[6]    Constructive fraud can also be shown "when a debtor makes a transfer or incurs an obligation 'without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.' (§ 3439.05, subd. (a).)  This form of transfer is voidable as to a creditor whose claim arose before the transfer was made. [Citation.]" (*Potter*, *supra*, 37 Cal.App.5th at p. 904.)  Raphael does not claim on appeal that the transfer of the Ventura and Fairway properties was voidable on this ground; instead, he relies on section 3439.04, subdivision (a)(2).

for an unknown period of time. Azim also testified that, when he had previously planned to travel to Afghanistan in 2015, he had begun the process of transferring property to Yama. Azim had to cancel that trip and did not proceed with the transfer at that time. Azim's testimony regarding his previous attempt to transfer property to Yama was corroborated by Navarro, an employee of Azim's bridge lender.

Azim's testimony was neither "physically impossible" nor "inherently implausible"; therefore, we "may not reject [the] evidence as lacking credibility . . . ." (*State Farm Fire & Casualty Co. v. Jioras* (1994) 24 Cal.App.4th 1619, 1626, fn. 5; see also *Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1534 [an appellate court "may not reweigh the evidence or judge the credibility of witnesses unless their testimony is 'inherently improbable or clearly false[]'"].) Based on that testimony, the trial court was not compelled, as a matter of law, to make a finding of actual fraud. Rather, it could reasonably conclude, as it did, that the property transfer "was not done to avoid creditors and . . . was not fraudulent or voidable."

B. Constructive fraud (§ 3439.04, subd. (a)(2))

On appeal, Raphael's primary argument is that the undisputed evidence demonstrates constructive fraud under section 3439.04, subdivision (a)(2). However, nothing in the record before us indicates that Raphael raised a theory of liability based on constructive fraud in the trial court.

Tracking the language of section 3439.04, subdivision (a)(1), regarding actual fraud, the complaint alleged that the property transfer "was made with an actual intent to hinder, delay, or defraud" Azim's creditors, including Raphael. The complaint did not cite section 3439.04, subdivision (a)(2), or

8

echo its language.  Nor do the trial transcripts or filings in the action reflect that a constructive fraud theory was ever presented to the trial court.[7]

"The rule is well settled that the theory upon which a case is tried must be adhered to on appeal.  A party is not permitted to change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240–241; see also *Nellie Gail, supra,* 4 Cal.App.5th at p. 997.)  Accordingly, Raphael has forfeited his argument regarding constructive fraud.  (See *Schultz v. Workers' Comp. Appeals Bd.* (2015) 232 Cal.App.4th 1126, 1134 ["issues not raised in the trial court are generally forfeited for purposes of appeal"]; *Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011 ["Issues presented on appeal must actually be litigated in the trial court—not simply mentioned in passing"].)

---

[7]    The reporter's transcripts provided to us do not include the closing arguments.  As the appellant, Raphael has the burden of providing an adequate record establishing error. (*Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 660.) "Failure to provide an adequate record on an issue requires that the issue be resolved against appellant." (*Ibid.*)

9

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.



_____, Acting P. J.
ASHMANN-GERST

We concur:



_____, J.
CHAVEZ



_____, J.
HOFFSTADT

10