Filed 9/16/25  Vasquez v. Jimenez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GILBERT R. VASQUEZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTHA JIMENEZ et al.,<br><br>    Defendants and Appellants. | B330389<br><br>(Los Angeles County Super. Ct. No. 21STCV17891) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia R. Martin, Judge.  Affirmed.

Law Office of Kenneth Gaugh and Kenneth Gaugh for Defendants and Appellants.

Herzlich & Blum and Allan Herzlich for Plaintiff and Respondent.

_____

Martha and Miguel Jimenez (collectively, the Jimenez defendants)[1] appeal from a judgment entered after a bench trial in favor of Gilbert R. Vasquez and against the Jimenez defendants ordering that Miguel's transfer of his house to Martha (Miguel's uncle's ex-wife) be set aside as void under the Uniform Voidable Transactions Act (UVTA; Civ. Code, § 3439 et seq.).[2] On appeal, the Jimenez defendants argue substantial evidence does not support the trial court's finding that Martha did not pay Miguel a reasonably equivalent value for the transfer of his house. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Vasquez's First Amended Complaint*

In May 2021 Vasquez filed this action against the Jimenez defendants to set aside a voidable (and fraudulent) transfer from Miguel to Martha under sections 3439.04 and 3439.05 of the UVTA. Vasquez alleged in his first amended complaint that in March 2015 he sued Miguel and others (the prior action), and on July 11, 2018 the trial court entered a judgment against Miguel for $878,425.

However, on August 3, 2016, during the pendency of the prior action, Miguel transferred his house located in South Gate (the Property) to Martha by grant deed. The complaint alleged Miguel did not receive "a reasonably equivalent value in exchange for the transfer." Further, at the time of the transfer,

---

[1]  To avoid confusion, we refer to Martha and Miguel Jimenez by their first names.

[2]  Further undesignated statutory references are to the Civil Code.

2

Miguel "was insolvent or became insolvent as a result of the transfer."

Vasquez alleged Miguel's and Martha's conduct injured him by hindering his ability to satisfy his judgment against Miguel. Vasquez sought damages, a declaration that the transfer was deemed void and set aside; an order declaring the Property to be the sole and separate property of Miguel and directing Martha to execute a grant deed transferring the property to Miguel; and, if Martha failed to comply, authorizing the clerk of the court to execute the grant deed.

B.    *The Parties' Stipulated Facts*

On January 31, 2023 the parties filed a stipulation of facts for trial setting forth the following facts. On November 15, 2014 Miguel purchased the Property for $240,000 and obtained a grant deed.[3] On March 26, 2015 Vazquez filed a complaint against Miguel in the prior action.[4] On December 8, 2015 Martha, the ex-wife of Miguel's uncle, sold her house in West Covina. On April 7, 2016 Martha paid off Miguel's outstanding promissory note for $23,250 owed to Mark and Joalcan Reynolds, which was secured by a deed of trust on the Property. On July 22, 2016 Miguel transferred the Property to Martha by grant deed, which stated, "'This is a bonafide gift and the grantor received nothing in return.'" The grant deed was recorded on August 3, 2016. On the same day, Martha obtained a $215,000 loan secured by a deed

---

[3]    The amount paid for the property is undisputed and referenced in the amended settled statement.

[4]    The complaint in the prior action, Los Angeles County Superior Court case No. BC576919, was attached as an exhibit to the stipulation and was admitted as a trial exhibit.

3

of trust on the Property in favor of Pacific West Mortgage Fund. Martha used the loan proceeds to pay off a promissory note for $192,000 that Miguel owed to Michael Coccia Trust and the Entrust Group. The Los Angeles County Assessor (Assessor) appraised the Property as of August 3, 2016 at $384,000.

The parties stipulated that the July 11, 2018 judgment for Vasquez in the prior action for $878,425 had not been satisfied.

C.    *The Court Trial*[5]

Martha testified that in December 2014 Miguel offered to transfer the Property to her and she had a verbal agreement with Miguel that she would pay off the trust deeds recorded against the Property and pay Miguel $10,000. However, on cross-examination Martha acknowledged that Miguel agreed to transfer title to her *after* she moved into the Property with her son in April 2015.[6]

Miguel testified there were four conditions for his transfer of the Property to Martha, including that Martha pay him $10,000; she "[m]ake the necessary repair/ improvements to . . . make the Subject Property habitable"; and she pay off Miguel's promissory notes for $192,000 and $20,000 because they "were secured by the Subject Property."

---

[5]    The summary of the trial testimony and evidence is taken from the amended settled statement proposed by Vasquez and approved by the trial court, after considering the Jimenez defendants' requested changes.

[6]    The amended settled statement states that Martha testified to this (and other concessions discussed below) at trial or in her prior deposition (which testimony was read into the record at trial).

4

Martha further testified that shortly after she reached the verbal agreement with Miguel regarding transfer of the Property, she spent approximately $45,000 to repair and improve the Property, including remodeling the bathroom, kitchen, floors, cabinets, and plumbing. However, on cross-examination Martha conceded, "The repairs didn't never have anything to do with the purchase of the home." Rather, the repairs were made to allow her and her son to move in and live there. Martha also stated that from April 2015 through August 2016 she paid the "monthly maintenance expenses" for the Property, including the monthly loan payments on Miguel's two promissory notes and the monthly electricity and gas utility payments.

Miguel testified that at the time he transferred the Property to Martha in August 2016, "it was his opinion as the owner of the property that it was worth $280,000 based on its condition." However, in Miguel's prior deposition testimony read into the record, he answered "no" when asked whether he had done anything to determine the value of the Property at the time he transferred it to Martha. Further, Miguel admitted the condition of the Property had been improved since he purchased it and that real property in the Los Angeles area had appreciated substantially between 2014 and 2016. Martha similarly opined that the Property was worth $280,000 "just after" she acquired it. But Martha stated in cross-examination that she did nothing to determine the value of the Property before she took title, and she had not done anything since then to determine the value. Martha also acknowledged the Assessor assessed the Property at $384,000 as of August 3, 2016, and she did not challenge the assessment. According to the amended settled statement, the tax "Assessor sheet assessing Subject Property at $384,000" (assessor

5

sheet) was "allowed to be used as evidence to support or disprove the testimony," and there were no objections to admission of the exhibit.[7]

At the conclusion of the bench trial, the trial court made a finding "that the consideration given by Martha Jimenez to Miguel Jimenez for the Subject Property WAS NOT the [r]easonably [e]quivalent [v]alue required by the California Civil Code."

D.    *The Judgment*

On April 24, 2023 the trial court entered a judgment in favor of Vasquez and against the Jimenez defendants.[8]  In the judgment, the court "deemed void" Miguel's transfer of the Property to Martha by grant deed and ordered the grant deed set aside.  In addition, the court "determined and ordered that the Subject Property is, in fact, the sole and separate property of [Miguel]."  The court ordered Martha to execute a grant deed transferring the Property back to Miguel, and if Martha failed to convey the Property within 10 days after proper service of the judgment on her, the court authorized the clerk of the court to execute the grant deed.  The judgment also awarded Vasquez his costs of suit.

---

[7]    The exhibit was attached to the stipulation of facts as exhibit 8 but is not included in the appellate record.

[8]    Although the judgment does not specify on which cause of action Vasquez prevailed, the Jimenez defendants state in their opening brief that the trial court entered judgment on the third cause of action for a voidable transfer under section 3439.05 by a debtor who was or became insolvent and the court dismissed the remaining causes of action.  Vasquez likewise focuses on this cause of action in his respondent's brief.

6

The Jimenez defendants timely appealed.

## DISCUSSION

A. *The UVTA*

The UVTA, formerly known as the Uniform Fraudulent Transfer Act (see Stats. 2015, ch. 44, § 2, p. 1456 (Sen. Bill No. 161 (2015-2016 Reg. Sess.)), "permits defrauded creditors to reach property in the hands of a transferee." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663; accord, *Potter v. Alliance United Ins. Co.* (2019) 37 Cal.App.5th 894, 910 (*Potter*).) A creditor may set aside a transfer as fraudulent by showing actual fraud or constructive fraud. (*Mejia*, at p. 664; *Potter*, at pp. 903-904.) Under section 3439.04, subdivision (a)(1), actual fraud is shown where the debtor made the transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor." Alternatively, under section 3439.05, subdivision (a), at issue here, "a transfer is constructively fraudulent when a debtor makes a transfer or incurs an obligation 'without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.' [Citation.] This form of transfer is voidable as to a creditor whose claim arose before the transfer was made." (*Potter*, at p. 904.)[9] A creditor making a

---

[9] Under section 3439.04, subdivision (a)(2), a transfer is also constructively fraudulent where a debtor makes a transfer or incurs an obligation "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: [¶] (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or

7

claim for relief under section 3439.04, subdivision (a), or section 3439.05, subdivision (a), has the burden of proving the elements of the claim for relief by a preponderance of the evidence.  (§§ 3439.04, subd. (c); 3439.05, subd. (b).)

"'A creditor who is damaged by a transfer described in either section 3439.04 or section 3439.05 can set the transfer aside or seek other appropriate relief under Civil Code section 3439.07.'  [Citation.] . . .  [A] creditor may recover against either '[t]he first transferee of the asset or the person for whose benefit the transfer was made.'" (*Potter, supra*, 37 Cal.App.5th at p. 904, citing § 3439.08, subd. (b)(1); see *MACH-1 RSMH, LLC v. Darras* (2024) 103 Cal.App.5th 1288, 1300 ["The UVTA specifies certain remedies available to the creditor, including avoidance of the transfer to the extent necessary to satisfy the creditor's claim, an attachment pending litigation of the claim, and a levy of execution once the creditor has obtained judgment on the claim."].)

B.    *Standard of Review*

"Whether a transfer is made with fraudulent intent and whether a transferee acted in good faith and gave reasonably equivalent value within the meaning of section 3439.08, subdivision (a), are questions of fact.  [Citation.]  'When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule.  If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed.'" (*Nautilus, Inc. v.*

transaction[; or]  [¶]  (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

8

*Yang* (2017) 11 Cal.App.5th 33, 40.)  Under the substantial evidence standard of review, "'findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Lopez v. La Casa de Las Madres* (2023) 89 Cal.App.5th 365, 378; accord, *Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173 [under the substantial evidence standard of review, "we accept all evidence that supports the judgment, disregard contrary evidence, and draw all reasonable inferences to uphold the judgment"].)

"'[I]n a bench trial, the trial court is the "sole judge" of witness credibility.  [Citation.]  The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so.'" (*Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579; accord, *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)  Moreover, where neither party requested a statement of decision under Code of Civil Procedure section 632, as here, "we apply the doctrine of implied findings and presume the trial court made all necessary factual findings supported by substantial evidence." (*Award Homes, Inc. v. County of San Benito* (2021) 72 Cal.App.5th 290, 297; accord, *In re Marriage of Destiny & Justin C.* (2023) 87 Cal.App.5th 763, 769-770 ["'Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.'"].)

C.    *Substantial Evidence Supports the Trial Court's Finding Martha Did Not Pay Reasonably Equivalent Value to Miguel for the Property*

The Jimenez defendants' sole contention on appeal is that substantial evidence did not support the trial court's finding that Martha did not pay reasonably equivalent value for the Property. They argue the court improperly relied on the stipulated fact that the Assessor valued the Property at $384,000 as of August 3, 2016, because under Evidence Code section 813, subdivision (a), an Assessor's appraisal is not evidence of the value of the property.  Substantial evidence supports the court's finding that Martha did not pay reasonably equivalent value for the Property.

The Jimenez defendants are correct that Evidence Code section 813, subdivision (a), limits proof of a property's value to opinions expressed by qualified witnesses, a property owner, or the spouse of the owner.[10]  Thus, absent testimony from a witness, the assessor sheet was not admissible to show the fair market value of the Property.  (See *Smith v. Shasta Electric Co.* (1961) 190 Cal.App.2d 729, 736-737 ["Appellants assign as error the refusal of the trial court to allow in evidence the tax assessment sheets of the county assessor as affirmative evidence of value of the destroyed property.  'The valuation placed on

---

[10]    Evidence Code section 813, subdivision (a), provides, "The value of property may be shown only by the opinions of any of the following:  [¶]  (1) Witnesses qualified to express such opinions.  [¶]  (2) The owner or the spouse of the owner of the property or property interest being valued.  [¶]  (3) An officer, regular employee, or partner designated by a corporation, partnership, or unincorporated association that is the owner of the property or property interest being valued, if the designee is knowledgeable as to the value of the property or property interest."

10

property by a tax assessor is not competent evidence of its fair market value.'"]; *Everts v. Matteson* (1945) 68 Cal.App.2d 577, 581 [the tax assessor's "appraisal for taxation was not evidence of market value"].)

However, the Jimenez defendants stipulated that the Assessor appraised the Property at $384,000, and they did not object to admission of the assessor sheet containing the appraisal. Therefore, they forfeited their contention the trial court erred (or abused its discretion) in admitting the assessor sheet. (See Evid. Code, § 353, subd. (a) ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:  [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion."]; *People v. Clark* (2016) 63 Cal.4th 522, 603 ["Defendant's failure to object on this specific [evidentiary] ground below forfeits his claim on appeal."]; *People v. Polk* (2010) 190 Cal.App.4th 1183, 1194 ["Under Evidence Code section 353, subdivision (a), a judgment can be reversed because of an erroneous admission of evidence only if the record contains an objection both "'timely made and so stated as to make clear the specific ground of the objection'" or motion."].)

Further, the amended settled statement does not state on what basis the trial court found that Martha did not give Miguel reasonably equivalent value for the property. Although the statement lists the assessor sheet as an exhibit that was "allowed to be used as evidence," it does not specify for what purpose the court considered the assessor sheet (if it all).  The court could have reasonably found that Miguel's and Martha's opinions that

11

the market value of the Property was $280,000 were not credible in light of the numerous inconsistencies in their testimony and lack of supporting evidence for their valuations. Both Miguel and Martha admitted they did nothing to determine the value of the Property at the time Miguel transferred the Property to Martha. Further, Miguel acknowledged that real property in the Los Angeles area had appreciated substantially between 2014 (when he purchased the Property for $240,000) and 2016 (the date of the transfer). The court could also have credited the statement in the 2016 grant deed transferring the Property from Miguel to Martha that "[t]his is a bonafide gift and the grantor received nothing in return." In this context, the court could have considered the Assessor's valuation for impeachment purposes to show Miguel's and Martha's $280,000 valuations were not credible.

Moreover, even if the trial court had credited Miguel's and Martha's valuation of the Property at $280,000, the evidence shows Martha provided only $225,250 in value to Miguel to purchase the Property. The parties stipulated that Martha paid off Miguel's two promissory notes for $192,000 and $23,250. In addition, Martha testified she paid Miguel $10,000. Although Martha also testified that she spent approximately $45,000 to make repairs to the Property, she admitted "[t]he repairs didn't never have anything to do with the purchase of the home." Substantial evidence therefore supports the court's finding that Martha did not pay reasonably equivalent value for the Property because her total payment of $225,250 was $54,750 less than the asserted $280,000 fair market value of the Property at the time of the transfer.

## DISPOSITION

The judgment is affirmed.  Vazquez shall recover his costs on appeal from Martha and Miguel Jimenez.

FEUER, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.