[Civ. No. 48883. Second Dist., Div. Five. Nov. 12, 1976.]

ENRIETTA LEE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
HARRY JAY LEE, Real Party in Interest.

**COUNSEL**

Goodman, Hirschberg & King and Henry Seligsohn for Petitioner.

No appearance for Respondent.

Marvin M. Mitchelson for Real Party in Interest.

## OPINION

KAUS, P. J.—Petitioner Enrietta Lee, and real party in interest, Harry Jay Lee, are involved in a marriage dissolution proceeding. The trial court, on Harry's motion, ordered "pendente lite" the release of a lis pendens recorded by Enrietta against property asserted by her to belong to the community, and, at the same time, authorized the sale of that property, the proceeds to be used to pay debts owing in a business operated by Harry and claimed by him to be his separate property. The trial court stayed its order pending the filing of a petition for extraordinary writ by Enrietta. We granted the alternative writ and ordered that the trial court's stay order be continued in effect.

### FACTS

The facts are based on the documents submitted by the parties in connection with Harry's motion to release the lis pendens and to authorize the sale of the property. Other than this documentation and the balance of the superior court file, the trial court had no other information before it.

In the dissolution action, Enrietta claims that the community property included a floor covering business, the real property on which the business was located, a duplex in which the parties had lived, and an eight-unit apartment building. This proceeding involves the floor covering business and the eight-unit apartment building.

In January 1976, Enrietta signed a quitclaim deed to both the apartment house and the duplex. She claimed that her husband "forced" her to do so. After signing the deeds, she consulted an attorney, who filed the lis pendens against the properties.

Harry, through his attorney, declared that his floor covering business was "on the brink of total financial disaster," that he had accounts payable in excess of $56,000, and that he had an offer to buy the eight-unit apartment house at a price which would yield $47,500 in cash. Harry's attorney described him as being the "sole proprietor, and title holder" of both the floor covering business and the eight-unit apartment building.

Enrietta apparently considered the purchase price a good one and stated that she was not opposed to the sale as such, provided the

proceeds could be held in a joint bank account requiring joint signatures. Harry, however, wanted to use the sale proceeds to pay the accounts owing from the carpeting business.

Harry's statement of accounts payable is, apparently, generally accurate. An accountant retained by Enrietta indicated that Harry's cash shortage resulted from his prepaying mortgage payments on the family duplex and the apartment house, and in lending a substantial amount to his parents. Nothing in the record, however, indicates that these transactions were opposed by Enrietta or that they reflected sharp practices. Enrietta's attorney pointed out that, given the volume of Harry's business, it appeared that he had merely "ceased making payments," possibly to precipitate a business crisis that would justify his request that the apartment house be sold.

The trial court, in ruling on Harry's motion, did not decide whether the carpeting business or the apartment house were in whole or in part community or separate property and necessarily did not determine the value of the community property. Rather, relying on Civil Code section 4359 and Code of Civil Procedure sections 128 and 187—which we discuss below—the court found that the sale of the eight-unit apartment building was "necessary to preserve another alleged community asset," the floor covering business, that other means of financing the business were not available to Harry and that the business needed between $30,000 and $50,000 "immediately . . . ." The court ordered the proceeds from the sale distributed to Harry's lawyer and ordered the lawyer to deposit the funds in his client's trust account, to pay the "just business debts and obligation actually due and owing," and to file a detailed accounting with the court.

### DISCUSSION

Civil Code section 4359 provides no authority for the trial court to order that a disputed asset be sold and the proceeds distributed to one spouse, over the objections of the other spouse.

Section 4359 states that during a dissolution or nullification proceeding, on application of either party in a manner provided by Code of Civil Procedure section 527[1] "the superior court may issue ex parte orders (1)

---

[1]Code of Civil Procedure section 527 provides for the issuance of temporary restraining orders and preliminary injunctions.

restraining any person from transferring, . . . or in any way disposing of any property . . . whether community, . . . or separate, except in the usual course of business or for the necessities of life, and if such order is directed against a party requiring him to notify the other party of any proposed extraordinary expenditures and to account to the court for all such extraordinary expenditures; . . ."

The very language of section 4359 makes clear that it is intended to apply only to prevent a transfer—to maintain the status quo—and does not authorize the trial court, ex parte or otherwise, to change the status quo by authorizing the sale of property involved in a dissolution proceeding and the transfer of the proceeds to one of the parties without adequate safeguards for the other. Real party's reliance on the phrase "usual course of business" is clearly inapplicable. That phrase is a limitation on the power of the trial court to issue such orders. In brief, the trial court turned section 4359 inside out: it could have *prevented* Harry from selling the business or the apartment house; it could *not* have prevented Harry from paying bills from business proceeds in the ordinary course of business. Instead, the court authorized Harry to sell the apartment house and furnished him with the money to pay business bills.

■ Neither are Code of Civil Procedure sections 128 and 187, also relied on by the trial court, of help. Section 128, which states the general powers of courts, has been in existence since 1872, and does not purport to define the specific powers of the trial court under the Family Law Act. Section 187, also enacted in 1872, is also a general statute stating that if a court has jurisdiction "any suitable process or mode of proceeding may be adopted . . . ."

■ Nevertheless, that the court had no authority under section 4359 to make the order under review, does not mean that such authority was totally lacking. Section 4351 provides that the court has jurisdiction to "make such orders as are appropriate concerning . . . the settlement of the property rights of the parties . . . ." Section 4800 requires the trial court to divide the community property equally in its interlocutory judgment and provides the court with latitude to carry out the purposes of the statute.

The problem here is that although the nature and extent of the community property are in dispute, the trial court made orders that

effectively settled a part "of the property rights of the parties" without knowing whether it was, in fact, giving $24,000 that belonged to Enrietta to Harry to pay the debts of Harry's separate business, and without providing any assurances that if half the proceeds from the apartment house belong to Enrietta, she will have more than a bare right to demand an accounting and to obtain a surcharge against any existing assets.

We hold, in brief, that the trial court could, with appropriate safeguards, have required one potential community asset to be sold to save another such asset. Thus, nothing in the Family Law Act would have prohibited the trial court from conducting a partial trial limited to a determination of the community or separate character of the apartment building and the existence of other community assets sufficient to offset any loss Enrietta might incur from the loss of proceeds from the apartment building. Alternatively, nothing in the Family Law Act would have prevented the trial court from ordering the sale of a claimed community asset—particularly where, as here, the opposing spouse has no objection to the sale itself—without making any factual determinations beyond the value of the asset to be sold, provided it required security sufficient to protect the objecting spouse.

The trial court in this case took neither alternative. On disputed and unresolved facts, it made a de facto determination that Enrietta could not be prejudiced by the sale of the property and the release of the proceeds to Harry or his creditors. By so doing the trial court effectively disabled itself from fully performing its duty under section 4800, subdivision (a), to determine and divide the community property.

The peremptory writ of mandate is granted, with directions to the trial court to proceed, if real party still so desires, in accordance with the views expressed in this opinion. Pending such action, the lis pendens shall be reinstated.

Stephens, J., and Hastings, J., concurred.