[No. G033968. Fourth Dist., Div. Three. Oct. 6, 2004.]

LEE GALE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
LAURA GALE, Real Party In Interest.

1390

COUNSEL

Law Offices of David B. Dimitruk and David B. Dimitruk for Petitioner.

No appearance for Respondent.

Schumann, Rallo & Rosenberg, Thomas C. Rallo and John F. Cannon for Real Party In Interest.

OPINION

SILLS, P. J.—

## I. INTRODUCTION

■ In this writ proceeding we hold that a family law petition for dissolution of marriage which does not allege a community interest in *specific* real property does not state a "real property claim" so as to support the filing of a notice of lis pendens with regard to that property. The plain language of the governing statute, section 405.4 of the Code of Civil Procedure, requires a pleading which alleges a claim that affects title or possession to "specific real property." The common practice of family lawyers in this state of being deliberately cagey or noncommittal in the family law petition or response by *not specifying items of community and separate property* (e.g., "such assets

as may be discovered at a later date" or "the full nature and extent of petitioner's community property is unknown at this time") does not comply with the statutory requirements allowing the filing of a notice of lis pendens, and consequently will not support such a filing.

## II.  BACKGROUND

Lee Gale (Husband) and Laura Gale (Wife) were married in 1994. Prior to the marriage, Husband was the trustee of a living trust that owned three expensive houses in Newport Beach, two of which were on Balboa Island. During the marriage, in 1995, the trust conveyed title to the three homes to Management VI Properties, LLC, which was formed to manage the properties. During the marriage Wife attended to many of the day-to-day details of that management, including making arrangements to keep the properties in repair and rented out. She also drew a salary from the company. Husband, however, had 99 percent of the voting rights in the firm.

Wife filed for dissolution in 2002 in a petition that did not mention anything at all about Management VI or the three properties it owned. Rather, the petition followed the common practice of not listing any specific assets as community or separate. Instead it only stated that there were such community assets "as may be discovered at a later date; the right to amend being reserved."[1] Management VI was *not* joined as a party to the proceedings.

In the spring of 2004, Management VI was in the process of selling one of the Balboa Island properties. (According to Husband, the purpose of the sale was to obtain the funds to fulfill an obligation—apparently one he unilaterally undertook on the company's behalf—to invest in a mobile home park, an investment on which he hoped to receive a higher return on capital.) Wife, herself a former real estate agent, thought the company was selling the property for too low a price, and should have held out for another $300,000. (She thought the value to be $1.4 million instead of the $1.1 million selling price.) So she filed a notice of lis pendens on the property.

The trial court judge denied Husband's subsequent motion to expunge, opining that he was not sure that maybe the automatic restraining orders issued at the outset of the case had not been violated by the mere attempt to sell. Husband then brought this writ petition to challenge the trial court's refusal to expunge the notice of lis pendens.

---

[1] On the Judicial Council form for petition of dissolution of marriage, under the line for declaration regarding community and quasi-community assets "as currently known," Wife's counsel simply typed in, "Such assets and obligations which may be discovered at a later date; the right to amend being reserved."

## III.  DISCUSSION

### A.  The Restraining Orders

Preliminarily, we must deal with the issue raised by the trial court's comments that the automatic restraining orders typically included in the summons in a divorce case might have been enough, by themselves, to prevent the sale of one of the Balboa houses. (See Fam. Code § 2040, subd. (a)(2).) We are forced into this detour because if the standard restraining orders *do* preclude the sale, then the case would not merit our discretionary writ review. Even a determination that Husband was entitled to have the notice of lis pendens expunged would not afford him effective relief. He (or more precisely, Management VI) still wouldn't be able to actually sell the property.

Read literally, the restraining orders forbid a divorcing spouse from even buying groceries ("you and your spouse are restrained from . . . transferring . . . or in any way disposing of *any* property, real or personal . . . .") unless one reads further and realizes the blanket preclusion is qualified for disposals of property either in the "usual course of business or for the necessities of life." Besides being a matter of common sense, these qualifiers are mandated by a formidable body of constitutional law precluding the summary deprivation of property without due process, i.e., without notice and hearing. That law was forged in the context of overreaching creditor's remedies in which alleged debtors found themselves summarily deprived of the use of their property without deliberative court proceedings. (See *Randone v. Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13] [prejudgment attachment procedure unconstitutional without notice and hearing]; *Blair v. Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242] [same for claim and delivery]; see also *Sniadach v. Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] [summary attachments without notice and hearing unconstitutional].)

The record before us contains the (fairly hefty) formal operating agreement for Management VI. While the agreement is relatively brief on the "purpose" of the company (merely that the purpose is "the management of the Properties"), the agreement also gives the "Manager" of the company (i.e., Husband) "all necessary powers to carry out the purposes . . . of the Company, including, but not limited to, the right to enter into and carry out contracts of all kinds" and to "own, manage, *sell*, lease, mortgage, pledge or otherwise acquire or *dispose* of Company property." (Italics added.)

The record also includes Wife's declaration, which only strengthens the conclusion that Management VI is a bona fide business entity. She recognizes she was paid a salary for her services in collecting the rent and managing the company bank account, and all but avers that the corporation was anything but an alter ego of the couple. On such a record, then, we may confidently say that "usual course of business" language exempted from the *automatic* operation of the restraining orders the attempt to sell the Balboa house by the company. On the most elementary level, title to the Balboa property is held by a third party, and that third party was not joined to the proceeding. While the trial court *could* issue restraining orders against Management VI without formal joinder (see Fam. Code, § 2045, subd. (a)), it would be a contravention of basic due process to hold Management VI itself accountable for restraining orders of which *it* never had notice.

On a more substantive level, even if we were, as an academic exercise, to disregard the separate identities of the company and Husband (and there is no basis to do that), the reallocation of assets to obtain a better return on capital is most assuredly in the "usual" course of business for a company whose business it is to hold and manage property.

Now, none of this is to say, of course, that Wife could not have sought a restraining order specifically targeted at *the company's* disposition of the Balboa property. But, to return to the basic theme of *Randone*, *Blair* and *Sniadach*, obtaining such order would have necessarily entailed the elementary due process of notice and a hearing, in which the merits of any application could be argued before the trial court. That scenario is quite different from the idea that mere *automatic* (no hearing) restraining orders issued against a divorcing spouse somehow can constrain a property management company merely because it is managed by that spouse.[2]

The lack of notice makes this case unlike one of the two major published family law decisions dealing with the usual-course-of-business language in restraining orders, *Lee v. Superior Court* (1976) 63 Cal.App.3d 705 [134 Cal.Rptr. 43]. There, the appellate court refused to disturb a trial court decision allowing the *sale* of a major community asset (an apartment house), but granted a writ vacating the decision to the extent that it allowed the proceeds to be used for an (apparently much needed) infusion of capital to

---

[2] Imagine the chaos and economic disaster that might be created if the mere filing of a petition for divorce *automatically* precluded major dispositions of property by a large company whose stock was primarily the community property of the divorcing spouses. Whatever else it does, family law should not be the occasion to inflict the misery of divorce on innocent parties, including employees of family-owned businesses.

pay the debts of a business of disputed character (a floor covering business). (See *id.* at pp. 708–710.) The appellate court reasoned that allowing the infusion "effectively settled" the disposition of the proceeds because if the business were one spouse's separate property, the other spouse would have nothing "more than a bare right to demand an accounting and to obtain a surcharge against any existing asset." (*Id.* at pp. 710–711.)

While one might construct a superficial parallel between *Lee* and the present case if one were inclined to equate a debt-ridden and (probably separate property) business (*Lee*) with a brand new investment in a mobile home park (this case), the point is that the orders attacked in *Lee* were the product of a full-scale hearing, not automatic orders. And even then the appellate court was still willing to approve an order allowing a sale as long as there was some reasonable assurance that the proceeds would not be dissipated.

The other case is *In re Marriage of Quay* (1993) 18 Cal.App.4th 961 [22 Cal.Rptr.2d 537]. There, the court observed that a spouse who had control over about $7 million in community funds from the sale of stock *did* violate restraining orders which included a usual-course-of-business exemption when he lent about a fifth of the money to an "illiquid" start-up company based on his friendship with that company's owner. (See *id.* at p. 972.) But in *Quay* the managing spouse was not in the "business" of turning a profit with the community funds entrusted him; by profession he was a medical doctor who founded a drug company, and after the sale of the community's stock in that company he had been entrusted with the proceeds of the sale pending trial. Hence his job was not that of maximizing return on capital or being a full-time investor—it was simply preserving the community property pending proper disposition by the court. The results might have been different if the spouse, instead of being a scientist whose drug company had recently been bought out, was a professional venture capitalist who made his or her *living* from investing.

### B. The Lis Pendens

So the automatic restraining orders would not prevent Management VI from selling the property. What about the notice of lis pendens that Wife filed obviously hoping to accomplish the same thing?

The potential for a notice of lis pendens to pour sand into the smooth gears of a real estate transaction has been well remarked in the cases. (E.g., *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 651 [15 Cal.Rptr.3d 805, 93

P.3d 395] [" 'the practical effect of a recorded lis pendens is to render a defendant's property unmarketable' "]; *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 523, fn. 2 [174 Cal.Rptr. 694, 629 P.2d 495] ["As a practical matter, the filing of a lis pendens usually clouds the title to the property and prevents its transfer until the litigation is resolved or the lis pendens is expunged."]; *BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 967 [89 Cal.Rptr.2d 693] ["Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged."].)

The authorization to file a notice of lis pendens is found in section 405.20 of the Code of Civil Procedure. In pertinent part it provides: "A party to an action who asserts a *real property claim* may record a notice of pendency of action in which that real property claim is alleged." (Italics added.)

"Real property claim" is defined in another statute of the same code, section 405.4, to mean "the cause or causes of action *in a pleading* which would, if meritorious, affect (a) title to, or the right to possession of, *specific* real property or (b) the use of an easement *identified in the pleading*, other than an easement obtained pursuant to statute by any regulated public utility." (Italics added.)

As the emphasized words show, there is no entitlement to file a notice of lis pendens without a cause of action in a *pleading* that affects title to *specific* real property.

As our Supreme Court recently explained in *Kirkeby*, the question of whether pleadings state a real property claim is tested by a " 'demurrer-like analysis' " that centers on the adequacy of the pleading. (*Kirkeby v. Superior Court, supra,* 33 Cal.4th at p. 648.) It is strictly a binary process: If you properly plead a real property claim, you can file a notice of lis pendens; if you don't, you can't. (See *ibid.* ["Therefore, review of an expungement order under section 405.31 is limited to whether a real property claim has been properly pled by the claimant."]; see also 5 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 11:140, p. 361 ["the only issue is whether the pleadings state a real property claim"].)[3]

---

[3] Of course, just because you *can* file a notice of lis pendens because you properly pled a real property claim doesn't mean your lis pendens is immune from attack on other grounds. (See *Kirkeby v. Superior Court, supra,* 33 Cal.4th at p. 651 [detailing other bases to expunge lis pendens].)

In the present case, no "real property claim" was pled by Wife in her petition. No specific property was mentioned, *at all.* Her claim that the holding company is at least part community is not even mentioned,[4] much less is there any attempt to specifically identify the property which it might arguably hold on behalf of the community. Thus a third party would already have to be familiar with the relevant marital property estate to even guess what real property might, or might not, be affected by the proceedings initiated by the petition.

■ The whole idea of a notice of lis pendens is to give constructive notice of the legal proceeding affecting title to a specific piece of property. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2004) ¶ 3:313, p. 3-104.) In effect, a notice of lis pendens " 'republishes' " the pleadings. (*Id.,* ¶ 3:314, p. 3-105.) Thus a potential buyer of the property should be able to go the courthouse and *look up* the documents (the pleadings) in the court proceeding which might affect title or possession of the real property he or she is thinking of buying or lending money on. There is no way a buyer could do that just by looking at the petition filed by Wife here.[5]

■ Put another way, because the purpose of a lis pendens is to notify "the world" as to a claim on specific real property, it is most assuredly not enough, as Wife appeared to argue at oral argument, merely to give notice to one's adversary. Adversaries in all likelihood already know about any claims. It is third parties—potential buyers or moneylenders—who need to be able to *ascertain from the pleadings* the nature of any claim to specific real property.

At oral argument Wife's counsel also contended that the Judicial Council petition form does not provide for the listing of specific community real

---

[4] Wife argues that the formation of Management VI during the marriage makes it community property. For the moment we will assume she is correct. (But see *In re Marriage of Koester* (1999) 73 Cal.App.4th 1032, 1037 [87 Cal.Rptr.2d 76] [rejecting argument that community acquires separate property business just because business is incorporated during the marriage]; *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583 [81 Cal.Rptr.2d 726] [need for *un*ambiguous statement to effectuate transmutation].)

[5] We may assume, based on *Kirkeby v. Superior Court, supra,* 33 Cal.4th 642, that if the petition *had* alleged that Management VI was holding specific property in constructive trust for the couple and had identified the specific property in question, the petition would have indeed pled a real property claim that could have supported a notice of lis pendens even if Management VI were not formally joined to the dissolution. (See *Id.* at pp. 649–651 [pleading alleging that specific property, as a result of fraudulent conveyance, was being held in constructive trust for benefit of creditors, supported filing of notice of lis pendens].) After all, a disinterested third party would be able, under those circumstances, to be able to go down to the courthouse and discover that there was litigation affecting that specific piece of property. But this hypothetical contrasts starkly with the pleading that Wife actually filed here.

estate. Au contraire. While item 5 of the standard form is a declaration regarding community assets "as currently known," subitem c of that form allows a petitioner to check a box saying "All such assets and debts *are listed*" and provides enough space to list property by address, or type in "see attachment" if the litigant desires to list any such real property in more detail. (The language is exactly the same on the response form as well.) So the listing of specific real property *is* contemplated by the standard form. It will therefore clearly not suffice for purposes of the lis pendens statute to merely check item 5c of the petition form *without* specifying the property on which the claim is made.[6]

■ In this proceeding Wife lays heavy emphasis on the reservation of her right to *amend* her petition, but that bare option alone can hardly constitute a pleading within the contemplation of the statute. A petition might never be amended, and in any event there was nothing in it to comply with section 405.4 *at the time* of the expungement hearing now under our review in this proceeding. A court's review on a motion to expunge a notice of lis pendens is confined to whether a claim "as pled" is a real property claim. (See *Kirkeby v. Superior Court, supra,* 33 Cal.4th at p. 650.) As King Lear might have said, if nothing is pled, nothing shall come of it.

Wife also suggests (it isn't all that clear whether she is actually arguing the point) that her serving a preliminary declaration of disclosure which *did* list the three properties and Management VI as community assets supported the filing of the notice of lis pendens. To the degree that she makes the argument, the answer is no. At the top of the preliminary disclosure form it says "do not file with the court." (See Fam. Code, § 2104, subd. (b) ["The preliminary declaration of disclosure shall not be filed with the court, except on court order; however, the parties shall file proof of service of the preliminary declaration of disclosure with the court."].) The document will thus, in the

---

[6] Since this case involves not even an *attempt* to specify the property to which the pleading made a claim, we are spared the need to address the question of precisely how much specificity in a pleading is required by section 405.4 of the Code of Civil Procedure to support a filing of notice of lis pendens. We do note, however, what Miller and Starr have to say about the specificity required in the notice itself: "It must contain an adequate description of the parcel of property involved in the litigation so that a search of the public records will disclose the identity of the parcel affected. The property description need not be the legal description by reference to a recorded map or metes and bounds. It is acceptable that the property be identified in a manner sufficient to put subsequent parties on notice." (5 Miller & Starr, Cal. Real Estate, *supra,* § 11:135, p. 339, fns. omitted; see also *id.* at § 11:13, p. 45, fns. omitted ["In order to give constructive notice, the instrument must contain a description of the real property sufficient to identify it, or it must refer to another recorded document that contains an adequate description."].)

normal course of things, not be a part of the public record that a potential buyer of real property could check. Moreover, as we just said, the theory of a notice of lis pendens is that it republishes the *pleadings* to give potential buyers notice. The exchange of a preliminary declaration of disclosure confined to two divorcing spouses hardly satisfies that need.

By the same token, to the degree that Wife argues that the very existence of a preliminary declaration of disclosure mentioning real property obviates any need to actually list that real property in the petition or response, the answer is that she is confusing what the Family Code requires, at a minimum, to get a divorce case going—in which case the usual noncommittal "not-ascertained-yet" boilerplate may do as far as the petition and response are concerned—and what it takes to support a notice of lis pendens under the Code of Civil Procedure. The latter contemplates the use of pleadings to inform third parties of potential claims on real property; the former doesn't.

■ Finally, Wife points to an oblique reference at the very end of the hearing on the expungement motion in which the court appears to have observed that Husband had the power to expunge the lis pendens in his own hands, simply by posting a bond for what Wife thought was the amount below market for which the Balboa house was being sold. However, unless there is a *pleading* setting forth a real property claim, a notice of lis pendens must be expunged, regardless of any bond. (See *Kirkeby v. Superior Court, supra*, 33 Cal.4th at p. 647 [" 'If the pleading filed by the claimant does not properly plead a real property claim, the lis pendens must be expunged upon motion under CCP 405.31.' "]; 5 Miller & Starr, Cal. Real Estate, *supra*, § 11:140, p. 363 ["The lis pendens must be ordered expunged if the court finds that the pleading on which the notice of pendency of action is based does not contain a real property claim."].)

## DISPOSITION

■ We thus conclude that there was no pleading alleging a real property claim that could support Wife's filing a notice of lis pendens in this case. Husband was therefore entitled to have it expunged. Our conclusion makes it unnecessary to address a secondary reason Husband argues for expungement, improper notice. (The notices were not mailed by certified mail to the company. (Cf. Code Civ. Proc., § 405.22.))

Let a peremptory writ of mandate issue commanding the superior court to vacate its order filed May 10, 2004, denying motion to expunge notices of pendency of action and in its place enter a new order granting that motion. Husband shall recover his costs in this proceeding.[7]

Rylaarsdam, J., and Ikola, J., concurred.

A petition for a rehearing was denied October 22, 2004, and the opinion was modified to read as printed above.

---

[7] In a petition for rehearing (albeit really only a request for modification), Husband requests that we clarify our intentions regarding this cost award. He anticipates that, when he seeks fees in the wake of this court's granting of his petition seeking a writ ordering the expungement of the notice of lis pendens (see Code Civ. Proc., § 405.38), he will encounter the argument that by not including an award of attorney fees, somehow our opinion will be construed to *preclude* them. Let us simply take this opportunity to reiterate the applicable rules: Appellate decisions are not authority for propositions not considered therein. (E.g., *People v. Scheid* (1997) 16 Cal.4th 1, 17 [65 Cal.Rptr.2d 348, 939 P.2d 748]; *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Hence no rule of *"expressio unius"* is available to say that just because we left an issue out of the opinion we necessarily decided that issue by silence. On top of that, the relevant authority fee statute (Code Civ. Proc., § 405.38) contemplates "finding[s]" on issues of "substantial justification" or "other circumstances [that] make imposition of attorney's fees and costs unjust," which points in the direction of proceedings in the trial court, not the appellate court. Strictly speaking, appellate courts do not "find" things: We reason, hold, deduce, conclude or otherwise rule. With very rare exceptions we leave all the "finding" to trial courts. (Accord, *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1024 [10 Cal.Rptr.3d 865] [fees not automatically awarded when lis pendens was withdrawn].) Hence our opinion is without prejudice to *either* party on the question of attorney fees. All we are awarding is costs pursuant to rule 27 of the California Rules of Court.

Husband also requests that we "make reference" to a third ground for expungement advanced in his petition (lack of probable validity). Husband's theory is that, should future proceedings result in the reversal of this court's own judgment granting his petition, Husband will have preserved his second and third grounds as alternative bases for seeking expungement. Obviously we have just granted this request. However, again the same rule applies. The fact that an appellate court doesn't mention that a litigant didn't raise an argument doesn't mean it wasn't raised, and can't·be asserted later if the procedural circumstances warrant.