Filed 1/6/25  Pham v. Nguyen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THUY PHAM,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>OLIVIA NGUYEN,<br><br>  Defendant and Respondent. | H051679<br>(Santa Clara County<br> Super. Ct. No. 17CV311664) |

Thuy Pham sued her ex-husband, An Duc Nguyen, and his first wife, Olivia Nguyen,[1] to void an allegedly fraudulent transfer of real property and also pursue damages and other relief.  This is the second appeal engendered by Olivia's special motion to strike Pham's complaint under Code of Civil Procedure section 425.16, California's anti-SLAPP[2] statute.  Because Olivia in the first appeal prevailed at the first step of the anti-SLAPP inquiry, we review only the trial court's determination on remand that Pham failed to carry her burden at the second step of the inquiry.  We conclude that Pham has shown minimal merit on her claim of actual fraud under the Uniform Voidable Transactions Act and her related theories that Olivia is liable in tort as a co-conspirator or

---

[1] For clarity, given their shared surname, we will refer to Olivia Nguyen and An Nguyen by their first names; no disrespect is intended.  (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

[2] SLAPP signifies "strategic lawsuit against public participation."

1

aider and abettor in An's fraud, but that she has failed to show minimal merit on her claim for constructive fraud. We accordingly reverse in part, and remand.

## I. BACKGROUND

**A.** *Allegations of the Operative Complaint*

An and Olivia divorced in 2004, and An then married Pham.

In 2007, An and Olivia reached a stipulated judgment on reserved issues in their dissolution. As part of the 2007 stipulation, they agreed to sell jointly owned real property located in Fawnskin, California and to equally divide the sale proceeds. But they did not sell the property.

An and Pham divorced in California in 2007, but An also sued Pham in Vietnam. In 2011, the Santa Clara County Superior Court accepted their "Stipulation and Order Regarding Global Settlement of All Issues," by which An and Pham agreed to "all the remaining issues of support, division of assets, and division of liabilities, relating to all properties located in both [California] and in Vietnam." As a part of the 2011 stipulated order, Pham was to receive five apartments in Vietnam in satisfaction of An's obligation to support their two minor children; other property in Vietnam was to be put in trust for the children; and An was to conclude the Vietnam litigation on terms consistent with the 2011 stipulated order.

An did not comply with the 2011 stipulated order, however, and continued to pursue full ownership of the real properties in Vietnam. So Pham in the California dissolution proceeding moved to enforce the terms of the stipulation and order.

At a March 26, 2014 hearing, the family court reinstated "Automatic Temporary Restraining Orders" (ATROs) against An, prohibiting him from transferring his interest in three properties, including the Fawnskin property. (See Fam. Code, § 2040.)

Within days, in violation of the ATROs, An agreed with Olivia to exchange An's one-half interest in the Fawnskin property for Olivia's interest in some previously undivided furniture. An and Olivia executed this April 2014 agreement as a stipulation to

2

amend their 2007 judgment. On April 1, 2014, An transferred his interest in the Fawnskin property to Olivia by interspousal deed. The Orange County Superior Court issued the stipulated order in June 2014. An also attempted to transfer his interest in other real properties to other family members.

Given An's violation of the ATROs, the family court relieved Pham of further compliance with the 2011 stipulated order, and ordered An to pay Pham attorney's fees in the amount of $60,000.[3]

Pham then sued An and Olivia, alleging among other things that the former spouses conspired "to fraudulently transfer [An's one-half interest] in [the] Fawnskin Home" and that the transfer was done in violation of the family court's ATROs "with the intent to hinder, delay, or defraud one or more creditor[s], including [Pham]." As is pertinent here, Pham's causes of action against Olivia are (1) actual fraudulent transfer (claim four), (2) constructive fraudulent transfer (claim five), (3) conspiracy to commit fraudulent transfer (claim six); and (4) aiding and abetting a fraudulent transfer (claim seven).[4]

### B.    *Olivia's Motion to Strike and Appeal*

In her special motion to strike Pham's complaint, Olivia argued that the 2014 stipulation was constitutionally protected petitioning activity. Pham disputed that her claim arose out of Olivia's protected activity but also produced evidence to support her claims.

---

[3] When An did not pay Pham's attorney's fees, the family court in August 2018 ordered An to pay $84,098.89—the unpaid $60,000 in fees and accrued interest—as well as over $2.75 million in past due child support. In addition, the family court issued two outstanding bench warrants for An's failure to appear for successive contempt proceedings.

[4] Pham's surviving ninth cause of action is a creditor's suit not at issue here.

3

Pham's evidence included the following. On February 14, 2014, Pham served An and Olivia with the notice of pending action Pham had caused to be recorded, alleging a "real property claim to [An's] legal and equitable ownership" of the Fawnskin property. (Pham's attorney had served An and Olivia at three addresses with the notice of pending action, including the address Olivia would soon use on the April 2014 interspousal transfer deed.) It was Olivia's attorney who, by April 1, 2014, prepared the stipulation by which Olivia and An agreed to the transfer of the Fawnskin property, purportedly in exchange for "personal property and furniture" overlooked in the 2007 stipulated judgment. Once An executed the transfer deed, Olivia's counsel then had it recorded.

The trial court rejected Olivia's argument that Pham's claims arose from Olivia's constitutionally protected activity, the first step of the anti-SLAPP inquiry. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Concluding that Pham's complaint arose from Olivia's alleged aiding and abetting of the wrongful transfer of the property (and not from the 2014 stipulated order), the trial court did not consider the second step of the anti-SLAPP inquiry—whether Pham had shown that her claims had "at least 'minimal merit.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.)

A panel of this court reversed, concluding that Pham's claims did arise from protected activity, and remanded to the trial court "for further consideration of the second prong of the motion to strike." The court also instructed, however, that An and Olivia's 2014 stipulated order would not be protected by the litigation privilege if Pham established her fraudulent transfer claim had minimal merit.

C. *Proceedings on Remand*

On remand, the trial court granted Pham's motion to conduct discovery for the limited purpose of showing a reasonable probability of prevailing. After taking Olivia's deposition and propounding additional interrogatories, Pham was able to supplement her opposition to Olivia's motion to strike. Pham also produced Olivia's deposition and

4

interrogatory responses, in which Olivia represented that on an unspecified date in February 2014, An called Olivia to initiate a trade of her interest in some high-end furniture for his interest in the Fawnskin property. Olivia also confirmed that she signed the 2014 stipulation on April 17. This was well after service of the notice of pending action, though Olivia maintained she "was completely unaware of any motion or order filed in the Pham/An Dissolution." Olivia also acknowledged that she was the one who retained counsel to assist with this transaction.

The trial court granted Olivia's motion as to claims four, five, six, and seven. The court found that Pham established a right of payment from An, a transfer of property from An to Olivia, and fraudulent intent, but that she presented no evidence of injury.

Pham timely appealed.

## II.    DISCUSSION

Because this court has determined that Pham's claims arose from Olivia's protected activity, Pham bore the burden at the second step of the anti-SLAPP analysis of showing that her claims have at least " 'minimal merit' "—i.e., " 'a minimum level of legal sufficiency and triability.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891 (*Wilson*) [noting plaintiff's "second-step burden is a limited one"]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 738.) In our de novo review, we neither " ' "weigh evidence [n]or resolve conflicting factual claims" ' " but limit our inquiry " ' "to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." ' " (*Wilson*, at p. 891; see also *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672.) Because Pham at this stage "need not prove her case to the court," we consider Olivia's competing evidence "only to determine if it defeats the plaintiff's claim as a matter of law." (*Wilson*, at p. 891.)

We conclude that Pham has demonstrated that her claim of An's actual fraud (claim 4) and Olivia's complicity in that fraud (claims 6 & 7) have at least minimal merit,

5

and relatedly that Olivia's competing evidence does not establish as a matter of law that she was a good-faith purchaser. To the limited extent that Pham has preserved a theory of avoidance for constructive fraud under Civil Code section 3439.05,[5] we conclude that Pham has not met her burden of demonstrating its minimal merit, because she has produced no evidence that An was or became insolvent upon the transfer.

## A.      *Legal Principles Relevant to Fraudulent Transfers*

Each of Pham's claims turn on whether An's transfer of his interest in the Fawnskin property to Olivia was fraudulent. A fraudulent transfer is a transfer of property " 'by a debtor . . . to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.' " (*Lo v. Lee* (2018) 24 Cal.App.5th 1065, 1071 (*Lo*).)

The Uniform Voidable Transactions Act (UVTA, § 3439 et seq.) "permits defrauded creditors to reach property in the hands of a transferee."[6] (*Lo, supra*, 24 Cal.App.5th at p. 1071.) Under the UVTA, a creditor may set aside a debtor's transfer of property by showing actual fraud as defined by section 3439.04, subdivision (a)(1), or constructive fraud as defined by either sections 3439.04, subdivision (a)(2) or 3439.05. (See *Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 817; *Potter v. Alliance United Ins. Co.* (2019) 37 Cal.App.5th 894, 903–904 (*Potter*).) The court may also attach assets, or employ equitable remedies such as injunctive relief or receivership. (§ 3439.07.) The

---

[5] Undesignated statutory references are to the Civil Code.

[6] Effective January 2016, the Legislature amended what had previously been known as the Uniform Fraudulent Transfer Act (UFTA) (Stats. 2015, ch. 44, §§ 1–16). "Among other changes, the Legislature replaced the word 'fraudulent' with 'voidable' and specified certain burdens of proof. (*Id.*, §§ 1–3, 6–7, 10.)" (*Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 455, fn. 8 (*Aghaian*).) The amendment did not alter the elements of a cause of action for a fraudulent or voidable transfer. (See *ibid.*; *Nagel v. Westen* (2021) 59 Cal.App.5th 740, 747 (*Nagel*); see also § 3439.14, subd. (d) [explaining that the UVTA "shall be construed as restatements and continuations, and not as new enactments"].)

court also has broad authority under the statute to provide "any other relief the circumstances may require." (*Ibid.*) But a creditor's remedies under the UVTA are not exclusive. (See *Berger v. Varum* (2019) 35 Cal.App.5th 1013, 1019 (*Berger*).) "UVTA remedies ' "are cumulative to the remedies applicable to fraudulent conveyances that existed before the uniform laws went into effect." ' " (*Id.* at p. 1021; see also § 3439.12 ["Unless displaced by the provisions of this chapter, the principles of law and equity, . . . supplement its provisions"].)

Actual fraud under section 3439.04, subdivision (a)(1) is shown when a debtor transfers property "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (*Potter*, *supra*, 37 Cal.App.5th at p. 904.) "Such a transfer is voidable as to a creditor of the debtor, 'whether the creditor's claim arose before or after the transfer was made or the obligation was incurred.' " (*Ibid*; see also § 3439.04, subd. (a).) The transfer is *not* voidable, however, "against a person [who] took in good faith and for a reasonably equivalent value." (*Potter*, at p. 904; § 3439.08, subd. (a).)

A transfer of property by a debtor without actual intent to hinder, delay, or defraud a creditor may still be voidable under the UVTA if the transfer was in exchange for less than "a reasonably equivalent value" and the creditor can establish one of three theories by which the debtor's financial condition at the time of the transfer made the transfer constructively fraudulent: (1) the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small" (§ 3439.04, subd. (a)(2)(A)); (2) the debtor "[i]ntended to incur, or . . . reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due" (§ 3439.04, subd. (a)(2)); or (3) the debtor at the time of the transfer was insolvent or "became insolvent as a result of the transfer" (§ 3439.05, subd. (a)).

The UVTA does not displace common-law tort liability for aiding and abetting or conspiring in the commission of a fraudulent transfer. (See *Berger*, *supra*, 35 Cal.App.5th at pp. 1025–1026.) A defendant is liable for aiding and abetting the

7

commission of an intentional tort if she "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." (*Berger*, at p. 1025; see also *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144 (*Casey*).) To be liable for civil conspiracy, a defendant must have "actual knowledge" of the planned tort, as well as "intent to aid in its commission." (*Navarrete v Meyer* (2015) 237 Cal.App.4th 1276, 1292 (*Navarrete*).)

**B.      *An's Actual Fraud and Olivia's Tort Liability (Claims 4, 6, and 7)***

To show actual fraud under the UVTA, Pham must show each of the following elements:  (1) that she has a right to payment from An; (2) that An transferred property to a third party—here Olivia; (3) that An acted with the intent to hinder, delay, or defraud; (4) that Pham was harmed by the transfer, and (5) that An's conduct was a substantial factor in causing Pham's harm.  (See Judicial Council of Cal. Civ. Jury Instns. (2024) CACI No. 4200.)  The parties here dispute neither that Pham has a right to payment from An nor that An transferred the Fawnskin property to Olivia.  Based on our independent review of the record, we find that Pham has shown to a minimal merit standard that when An made the transfer, he acted with the intent "to hinder, delay, or defraud," and that the transfer caused Pham injury by placing beyond her reach property she "otherwise would be able to subject to the payment of [her] debt." (*Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 80 (*Mehrtash*).)

**1.      *Fraudulent Intent***

"Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer." (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 834 (*Filip)*.)  Such circumstances, the "badges of fraud," include:  (1) whether the transfer was to an insider, (2) whether the debtor retained possession or control of the property, (3) whether the transfer was

8

disclosed, (4) whether before the transfer was made, the debtor had been sued or threatened with suit, (5) whether the transfer was of substantially all the debtor's assets, (6) whether the debtor absconded, (7) whether the debtor removed or concealed assets, (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred, (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made, (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider. (§ 3439.04, subd. (b)(1)–(11).) "These factors do not create a mathematical formula to establish actual intent," and there is "no minimum number of factors that must be present" before an intent to defraud is found. (*Filip*, at p. 834.)

Pham has demonstrated—to a "minimal merit" standard—the fraudulent intent element of this claim. In opposing Olivia's motion to strike, Pham presented undisputed evidence that An transferred the Fawnskin property to his former spouse, who falls within the broad definition of an "insider" under the statute. (§ 3439.04, subd. (b)(1); see *Kaisha v. Dodson* (N.D.Cal. 2010) 423 B.R. 888, 901 [recognizing that an "insider" under the UVTA is an individual with a " 'special relationship' " with the debtor—including a " 'family, friendship, or close associate relationship' "]; *Aghaian*, *supra*, 59 Cal.App.5th at p. 456 [debtor's wife and son are " 'insider[s]' " under the UVTA].) Pham also presented evidence that the transfer took place after Pham had moved to enforce the terms of the December 2011 stipulation and order, and that the transfer took place in direct violation of the family court's March 26, 2014 ATROs prohibiting An from transferring the property. (§ 3439.04, subd. (b)(4).)

In addition, though we are unable to determine whether An's transfer of his interest in the Fawnskin property was tantamount to a transfer of "substantially all [of An's] assets" (§ 3439.04, subd. (b)(5)), no single factor among section 3439.04, subdivision (b)'s nonexhaustive list is required. The value of the property was assessed

9

at least $2.5 million, and An's transfer of his half interest—if allowed to stand—would put beyond Pham's reach a substantial asset for the satisfaction of her debt. While the question of whether a transfer places beyond reach assets a creditor could otherwise seize is not a traditional badge of fraud, the badges of fraud enumerated in section 3439.04, subdivision (b) are not exclusive. The fact that the transfer prevented Pham from executing any judgment against real property worth millions may accordingly be considered in determining An's intent.

Finally, Pham presented evidence that An absconded from the family court's jurisdiction after the transfer. (§ 3439.04, subd. (b)(6).) Specifically, Pham introduced a minute order showing that An failed to appear in family court for contempt proceedings in 2018, that he attempted to kick the process server upon being served with a notice to appear, and that the court ultimately issued a $100,000 bench warrant for his arrest. Pham's evidence on the various "badges of fraud" suffices to meet her limited burden of demonstrating a probability of prevailing on the fraudulent intent element of her claim.

### 2. *Injury and Causation*

In addition to intent, "injury in fact is an essential element of a claim under the U[V]TA." (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 845 (*Fidelity*).) " 'A transfer in fraud of creditors may be attacked only by one who is injured thereby,' " and injury must be "affirmatively" shown. (*Mehrtash*, *supra*, 93 Cal.App.4th at p. 80.) But the threshold for injury from actual fraud under the UVTA is low: "[A]ll that the plaintiff must prove [for injury] is that the transfer put beyond the creditor's reach property that the creditor could otherwise have seized." (*In re Medina* (Bankr. 9th Cir. 2020) 619 B.R. 236, 245; *Mehrtash*, at p. 80 [holding that creditor suffers injury from actual fraud if " 'the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt' "].) Differently put, the property transferred must qualify as an "asset" under the UVTA, which expressly excludes the extent of any encumbrances and exemptions applicable under

nonbankruptcy law. (§ 3439.01, subd. (a); *Fidelity*, at p. 847 [noting that "the injury requirement is built into the express terms" of the UVTA's definition of " 'asset' "].) By contrast, a property that has no recoverable value is not an "asset" under the UVTA, and a debtor's transfer of such property causes a creditor no injury, even if the debtor acted with fraudulent intent. (See *In re Medina*, at p. 245.) In *Mehrtash*, for example, the transferred property was subject to multiple senior liens and the resident debtor's automatic homestead exemption, so even if the transfer were voided, the property could not have provided the plaintiff any recovery. (See *Mehrtash*, at p. 81; see *also Fidelity*, at p. 847 [accord].)

Here, however, Olivia does not dispute that An's interest in the Fawnskin property had unencumbered value that, absent the transfer, would be available to pay An's debt to Pham. According to Olivia, she and An in 2014 agreed to value the Fawnskin property at "approximately $2,500,000." And Olivia agrees that An's interest in the Fawnskin property had substantial value—equivalent to his interest in the "imperial furniture" of "Louvre museum quality" that he "always . . . want[ed] to bring . . . to Vietnam." Olivia represented this furniture "had been acquired for at least $3.2 million" and had diminished in value only "due to usage over time." And there is no dispute that "the transfer put beyond [Pham's] reach property [she] could otherwise have seized." (*In re Medina*, *supra*, 619 B.R. at p. 245.)

We note that the recording of Pham's notice of pending action did not forestall the injury here. Ordinarily, "a party obtaining an interest in the property subsequent to [a duly recorded] lis pendens . . . will be bound by the judgment in that action." (*Integrated Lender Services, Inc. v. County of Los Angeles* (2018) 22 Cal.App.5th 867, 877.) But under Code of Civil Procedure section 405.4, a notice of pending action must relate to an action stating a claim of "title to, or the right to possession of, specific real property." Without a community interest in the Fawnskin property, Pham's notice of the pending family litigation "does not state a 'real property claim' " so as to support the filing of a

11

notice of lis pendens with regard to that property." (*Gale v. Superior Court* (2004) 122 Cal.App.4th 1388, 1390.) So Olivia is not bound by the orders issued in Pham and An's family proceeding, because Pham's recording of the notice did not constitute a cognizable "real property claim" under Code of Civil Procedure section 405.4.[7]

Pham has shown An's transferred interest in the Fawnskin property had value, and that An's transfer of the property to Olivia injured Pham by putting beyond Pham's reach the real property she might otherwise use to satisfy her claim. (See *Mehrtash*, *supra*, 93 Cal.App.4th at p. 80.)

Olivia disputes that Pham was injured, arguing that the transfer was a "swap" of properties of "reasonably equivalent value" and produced no overall diminution of An's assets. The Court of Appeal rejected a similar argument in *Aghaian*, where plaintiffs sought to void an interspousal transfer on the basis of actual fraud. (See *Aghaian*, *supra*, 59 Cal.App.5th at pp. 453–454.) Defendants demurred on grounds that the debtor received from the transferee "reasonably equivalent value in exchange for the transferred properties." (*Id.* at p. 456.) The court rejected defendants' argument, explaining that "under section 3439.04, subdivision (a)(1), [plaintiffs] are not required to allege that [the debtor] failed to receive a reasonably equivalent value for the properties he transferred; it is sufficient to allege that the defendant made the transfer 'with "actual intent to hinder, delay, or defraud any creditor of the debtor." ' " (*Aghaian*, at pp. 456–457.) So too here, having shown fraudulent intent, Pham is not required to also show that An failed to receive reasonably equivalent value for his transfer of the Fawnskin property to Olivia. (*Id.* at p. 457, fn. 10 [noting that under the UVTA, a defendant's failure to receive

---

[7] Nonetheless, Pham's service of the notice of pending action let Olivia know of Pham's claim, making Pham a creditor under the UVTA's broad definition. (See § 3439.01, subds. (b) & (c).)

reasonably equivalent value is "not an element of a cause of action based on actual fraud"].)[8]

Accordingly, Pham has demonstrated the transfer of An's interest in the Fawnskin property caused her injury.

### 3.    *Good Faith*

Olivia contends that even if Pham establishes injury from An's actual fraud under section 3439.04, subdivision (a)(1), Pham cannot proceed on her claim against Olivia because Olivia is a good faith transferee.  At this stage, we cannot agree.

To begin, Olivia mistakenly presumes that Pham bears the burden of proving Olivia's bad faith under the UVTA.  As the party invoking the good-faith transferee defense of section 3439.08, subdivision (a), it is Olivia, not Pham, who bears the burden of proving both good faith and the reasonably equivalent value of her consideration for the transfer.  (§ 3439.08, subds. (f)(1), (g); see also *Nautilus, Inc. v. Yang* (2017) 11 Cal.App.5th 33, 40 (*Nautilus*) [party seeking to invoke defense bears burden of proving its applicability].)  As used in section 3439.08, "good faith" means that the "transferee acted without actual fraudulent intent and that he or she did not collude with the debtor or otherwise actively participate in the fraudulent scheme of the debtor." (Legis. Com. coms. – Assem., West's Ann. Civ. Code (2016 ed.) foll. § 3439.08, n. 1.) On this record, Olivia's bare claim that she was at the time of the transfer "unaware of any motion or order filed in the dissolution action between Pham and An" does not

---

[8] We note that Olivia testified in her deposition that she believed the furniture to be in An's possession in Vietnam, whereas Pham contends that the furniture was "non-existent," at least "at the time of the [Fawnskin property] transfer."  We need not resolve whether the furniture never existed or exists only beyond Pham's practical reach:  As we have explained, Pham is not required to show an absence of reasonably equivalent value to proceed on her actual fraud claim.  (See *Aghaian, supra*, 59 Cal.App.5th at p. 457, fn. 10.)

13

compel "as a matter of law" the conclusion that Olivia acted in good faith. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)

Moreover, "whether a transferee acted in good faith . . . [is a] question[] of fact." (*Nautilus*, *supra*, 11 Cal.App.5th at p. 40.) As we will next explain, Pham has presented sufficient circumstantial evidence of bad faith to meet her burden of demonstrating that her theories of Olivia's tort liability have at least minimal merit.

### 4. *Olivia's Potential Tort Liability*

Seeking not merely to avoid An's transfer to Olivia of his interest in the Fawnskin property, Pham also claims that Olivia was complicit in An's actual fraud as either a co-conspirator or aider and abettor. These theories require Pham to show not only An's fraud but Olivia's knowledge of An's planned fraud and substantial assistance or intent to aid in that fraud. (See *Berger*, *supra*, 35 Cal.App.5th at p. 1025; *Casey*, *supra*, 127 Cal.App.4th at p. 1144; *Navarrete*, *supra*, 237 Cal.App.4th at p. 1292.)

"Knowledge and intent 'may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.' " (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 206.) And here, Pham has put forth evidence that Olivia proceeded with the transfer of the Fawnskin property with actual notice from Pham's recorded lis pendens that Pham was pursuing a claim against An that implicated his interest in the Fawnskin property. (See *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647.) Pham has provided circumstantial evidence sufficient at this stage to show at least minimal merit to her claims of Olivia's wrongful intent and knowing participation in the fraudulent scheme.

As to Olivia's scienter, Pham had duly served Olivia in February 2014 with notice of Pham's pending family court litigation—notice expressly alleging Pham's "claim to [An's] legal and equitable ownership interest" in the Fawnskin property. It was at about this same time that An and Olivia first broached transferring An's interest in the Fawnskin property to Olivia. Although the transfer was nominally for equivalent value in

14

furnishings, their value was not so appreciable that Olivia or An thought to include it in their 2007 stipulated judgment on reserved issues, when Olivia was represented by counsel. And even valued at the reported cumulative purchase price of $3.1 million, Olivia understood the furniture to be with An in Vietnam, beyond the jurisdiction of the California family court. This evidence suffices to raise a reasonable inference that Olivia knew An's unexpected interest in divesting himself of the Fawnskin property was tied to Pham's assertion of a claim against him, and that Olivia intended to cooperate in An's thwarting that claim.

As to Olivia's substantial assistance in the scheme, Pham's evidence showed that Olivia arranged for her attorney to draft the 2014 stipulation, that she did so expeditiously enough for An to execute both the stipulation and the transfer deed on April 1, 2014, at the United States Consulate General in Ho Chi Minh City. (Olivia executed the stipulation on April 17, 2014.) Olivia's attorney filed the stipulation on her behalf and arranged for the recording of the executed transfer deed.

We conclude that Pham has presented sufficient evidence of Olivia's knowledge and participation in An's fraud to defeat Olivia's motion to strike Pham's related tort claims against her. Because Pham has shown "a minimum level of legal sufficiency and triability" as to each of those claims (claims 4, 6, & 7), the trial court should have denied Olivia's motion to strike. (See *Wilson*, *supra*, 7 Cal.5th at p. 891.)[9]

---

[9] In finding minimal merit on this claim, we do not overlook the evidentiary gaps in Pham's presentation. But "[w]e are inclined to allow the plaintiff in a SLAPP motion a certain degree of leeway in establishing a probability of prevailing on its claims due to 'the early stage at which the motion is brought and heard [citation] and the limited opportunity to conduct discovery.' " (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 530; *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 211, fn. 8 (*Maleti*) [accord].)

15

## C.     *Constructive Fraudulent Transfer (Claim 5)*

We reach a different conclusion as to Pham's fallback claim of constructive fraud. Unlike actual fraud under section 3439.04, subdivision (a)(1), constructive fraud under section 3439.05 requires Pham to show not only that An transferred the Fawnskin property "without receiving a reasonably equivalent value" but also that he "was insolvent at that time or . . . became insolvent as a result of the transfer." (§ 3439.05, subd. (a).)[10] "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets." (§ 3439.02, subd. (a); *Mejia v. Reed* (2003) 31 Cal.4th 657, 670.) Although Pham argues that Olivia presented no evidence that An is solvent, An's insolvency is an element of constructive fraud under section 3439.05. So it is Pham's burden to " ' "ma[k]e a prima facie factual showing sufficient to sustain a favorable judgment" ' " on that element of the claim. (See *Wilson*, *supra*, 7 Cal.5th at p. 891.) Even assuming An by the time of the transfer owed Pham more than the value of the five apartments awarded her in their 2011 stipulated judgment, Pham has supplied no evidence of An's assets and no basis to infer that these were outweighed by his debts.

Absent evidence of An's assets or net worth, Pham asks us to presume An's insolvency under section 3439.02, subdivision (b). "A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent." (§ 3439.02, subd. (b).) Pham's only evidence as to An's generally not paying his debts is her evidence that he is specifically not paying her. In determining whether a debtor is "generally not paying [his] debts as they become due,"

---

[10] On appeal, Pham alternatively argues that she has met the evidentiary threshold for constructive fraud under section 3439.04, subdivision (a)(2), but having failed to advance this theory in the trial court, she may not do so for the first time on appeal. "Issues presented on appeal must actually be litigated in the trial court," and " ' "[w]e ignore arguments, authority, and facts not presented and litigated in the trial court." ' " (*Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011.)

16

courts "take into account such factors as the number of the debtor's debts, the proportion of those debts not being paid, the duration of the nonpayment, and the existence of bona fide disputes or other special circumstances alleged to constitute an explanation for the stoppage of payments." (See Legis. Com. com. – Assem., West's Ann. Civ. Code (2016 ed.) foll. § 3439.02, n. 3.) Pham has presented no evidence on any of these factors. Because Pham has presented no evidence to facilitate a comparison of An's assets against his liabilities or to activate a presumption of insolvency, we cannot deem sufficient her showing of constructive fraud.

We therefore find no reversible error in the trial court's order striking Pham's claim of constructive fraud. (*Maleti, supra*, 82 Cal.App.5th at p. 202 [in reviewing an anti-SLAPP motion, we "review the trial court's decision, not its rationale"].)

### III.  DISPOSITION

The order granting the motion to strike the fifth cause of action in the operative complaint is affirmed. The order granting the motion to strike the remaining causes of action is reversed and the matter remanded so that Pham can proceed on claims 4, 6, 7, and 9. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3), (a)(5).)

17

 

_____

LIE, Acting P. J.

WE CONCUR:

 

_____

WILSON, J.

 

_____

BROMBERG, J.

*Pham v. Nguyen*
H051679